Gardner **DENVER and Liberty Mutual Insurance Company, Petitioners,**

v.

Robert A. **HANSEN; Charles McGrath, Director of the Division of Labor; and Industrial Commission of Colorado, Respondents.**

No. 81CA0933.

Colorado Court of Appeals, Div. I.

May 20, 1982.

Rehearing Denied June 10, 1982.

Zarlengo, Mott & Zarlengo, Albert E. Zarlengo, Jr., Denver, for petitioners.

Douglas R. Phillips, P. C., Douglas R. Phillips, Richard Gould, Denver, for respondent Robert A. Hansen.

J. D. MacFarlane, Atty. Gen., Alice Parker, Asst. Atty. Gen., Denver, for respondents Division of Labor and Industrial Commission of Colorado.

TURSI, Judge.

In this workers' compensation case, the employer and its insurer (petitioners) seek review of a final order of the Industrial Commission which awarded permanent total disability benefits for occupational disease to claimant, Robert A. Hansen. We affirm.

The record reflects that claimant worked for the employer for nine years. He filed a claim for workers' compensation benefits in 1974, alleging that he had sustained an occupational disease from inhalation of smoke fumes. Medical reports reflect that he suffered from bronchial asthma, chronic bronchitis, and hypertension. This claim was dismissed with prejudice in June 1976 after the parties stipulated that petitioners would pay claimant $2,500 without admitting liability in exchange for claimant's agreement to dismiss the claim.

Claimant was released by his doctor to return to work without restriction in July 1976 but left work in December because of respiratory problems. Thereafter he filed the instant claim. At a hearing in August 1977, he testified that he had gone back to work for the employer because he "couldn't do any other work." He was transferred to a clerical job in an attempt to isolate him from dust and fumes but he continued to be exposed to them. He stated that he experienced difficulty in breathing and became dizzy at work but not at home. He testified also that his respiratory problems first developed in 1968 when he started working for the employer. He did not return to work after December 1976.

Claimant was 39 years old. He had eight years of formal schooling and received his G. E. D. while in the army. In addition to six years' military service, he worked two years as a "beef lugger" and was working as a packer and file clerk for the instant employer at the time of his 1974 claim.

Claimant's physician testified, in March 1978, that he had treated claimant for respiratory problems since 1968, that his problems had gotten "progressively worse," and that the fumes and dust to which claimant told him he was exposed at work "aggravate ... or initiate" bronchospasms even though they may not have initially caused claimant's hypersensitivity. The doctor stated that claimant was not capable of returning to his previous occupation, that

he had been asymptomatic for the past six months when he had not been exposed to his work environment, but that with repeated exposure again to dust or fumes, in all probability, his problems would recur.

Based on the foregoing, the hearing officer found that claimant sustained a compensable accidental injury in the form of an aggravation of a pre-existing chronic obstructive pulmonary disease caused by irritants to which claimant was exposed at work. He awarded claimant temporary total disability benefits but reserved for a later date the determination of permanent disability. The Commission modified the order, finding that claimant had not sustained an accidental injury but rather that he had contracted an occupational disease which was proximately caused by his exposure to contaminants on the job. It found that his last injurious exposure occurred during his most recent employment in 1976. Based on evidence that claimant was well prior to returning to work in July 1976 and that his condition deteriorated while at work, it specifically found that "the disease was caused by the exposure in his employment and not from a hazard which claimant was equally exposed to outside of the employment." The Commission also concluded that claimant was totally disabled from the time he left work in December 1976 and awarded him permanent total disability benefits as of the date of the doctor's testimony.

■ Petitioners contend that there was insufficient evidence to support the Commission's finding that claimant contracted an occupational disease. They base this contention on the doctor's testimony that the cause of claimant's hypersensitivity could not be determined. We hold that the evidence was sufficient to establish that claimant was disabled by pulmonary disease as a result of the impact that the employment conditions had upon his individual hypersensitivity and that it need not be shown that the employment conditions initially caused such hypersensitivity.

In so holding, we adopt the view of the majority of jurisdictions which have addressed this issue and have held that, where employment conditions act upon a claimant's individual allergy, hypersensitivity, or pre-existing weakness so as to disable him, he has a compensable occupational disease, provided other requirements for compensability have been met. 1B *A. Larson, Workmen's Compensation Law* §§ 41.60–41.63 (1980); *see Herrera v. Fluor Utah, Inc.,* 89 N.M. 245, 550 P.2d 144 (1976). Also, our holding is in conformity with the long-standing principle of our compensation law that "[c]ompensation is not dependent on the state of an employee's health or his freedom from constitutional weakness or latent tendency." *Peter Kiewit Sons' Co. v. Industrial Commission,* 124 Colo. 217, 236 P.2d 296 (1951); *see Humes v. Director of Division of Labor,* 494 P.2d 1304 (Colo.App. 1972) (not selected for official publication).

■ Contrary to petitioners' further contention, evidence that claimant's problems recurred when he returned to work in 1976 and that he has generally been asymptomatic since he left work again in December 1976 supports the finding that claimant's disability did not come from a hazard to which he was equally exposed outside of his employment. The requirements of § 8–41–108(3), C.R.S. 1973 (1981 Cum. Supp.), defining occupational disease, were met.

With respect to petitioners' claim that the Subsequent Injury Fund should have been joined and held liable for the portion of claimant's disability that pre-existed the injury or disease sustained by claimant in his most recent employment, *see* § 8–51–106(1)(a), C.R.S. 1973 (1981 Cum. Supp.), the Commission found that claimant had had no prior permanent industrial disability and, further, that petitioners had not met their burden of establishing the portion of the industrial disability attributable to the subsequent injury.

On this review, petitioners contend that the Commission erred in not holding the Subsequent Injury Fund liable for a portion of claimant's disability benefits. They contend that claimant had a pre-existing disability which would make the Fund liable under § 8–51–106(1)(a), C.R.S. 1973 (1981

Cum. Supp.), and that the Commission abused its discretion in not requiring that a hearing be held on this issue. These contentions are without merit.

Since compensation was awarded for occupational disease, § 8–51–112, C.R.S. 1973 (1981 Cum. Supp.), provides for the extent of petitioners' liability and the liability, if any, of the Subsequent Injury Fund. Section 8–51–112(1) provides in pertinent part:

"Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier...."

Section 8–51–112(2), C.R.S. 1973 (1981 Cum. Supp.) provides that for certain enumerated diseases or diseases caused by certain exposures, none of which are involved here, the last employer and its carrier shall be liable for only a specified amount with additional benefits to be paid by the Subsequent Injury Fund. The specific provisions of this statute, applicable to occupational disease, take precedence over the general provisions of § 8–51–106(1)(a), C.R.S. 1973 (1981 Cum. Supp.) applicable to "injury," see § 2–4–205, C.R.S. 1973 (1980 Rep. Vol. 1B), notwithstanding that the statutory definition of injury includes occupational disease. See § 8–41–108(2), C.R.S. 1973 (1981 Cum. Supp.). Thus, we agree with the Commission, although not on the grounds set forth in its order, that § 8–51–106(1)(a) is inapplicable here, and that the Subsequent Injury Fund is not liable for any permanent disability benefits. Martinez v. Industrial Commission, 40 Colo.App. 485, 580 P.2d 36 (1978); cf. Union Carbide Corp. v. Industrial Commission, 196 Colo. 56, 581 P.2d 734 (1978).

Since we have decided this issue as a matter of law, we need not address the further contention that petitioners were deprived of the opportunity to present evidence on this issue.

We agree with the Commission that the record, including concessions by the petitioners, supports a finding of permanent and total disability and find no abuse of discretion in the award entered here. See American Metals Climax, Inc. v. Cisneros, 195 Colo. 163, 576 P.2d 553 (1978); Casa Bonita Restaurant v. Industrial Commission, Colo.App., 624 P.2d 1340 (1981).

Order affirmed.

COYTE and VAN CISE, JJ., concur.