**SUBSEQUENT INJURY FUND, Petitioner,**

v.

**Donald THOMPSON, Sam Kramer, State Compensation Insurance Authority, and Industrial Claim Appeals Office, Respondents.**

No. 89SC230.

Supreme Court of Colorado,
En Banc.

June 18, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Michael J. Steiner, First Asst. Atty. Gen., Denver, for petitioner.

Paul Tochtrop, Denver, for respondents Sam Kramer and State Compensation Ins. Authority.

Carol Mullins, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

No appearance for respondent Donald Thompson.

Justice LOHR delivered the Opinion of the Court. •

We granted certiorari to review an unpublished decision of the Colorado Court of Appeals affirming a decision of the Industrial Claim Appeals Office (Panel). *Subsequent Injury Fund v. Thompson,* No. 88CA1119 (Colo.App. Mar. 23, 1989). The court of appeals held that the Subsequent Injury Fund (SIF) was liable for a portion of the permanent total disability benefits owed an employee rendered permanently and totally disabled by two separate myocardial infarctions (heart attacks) despite the employee's pre-existing non-industrial condition that made him susceptible to heart attacks. We affirm the court of appeals' judgment.

## I.

On February 8, 1986, and November 23, 1986, Donald Thompson suffered work-related heart attacks that rendered him per-· manently and totally disabled. Thompson was awarded permanent total disability benefits pursuant to section 8–51–107(1), 3B C.R.S. (1986).[1] Thompson's entitlement to those benefits is not disputed in this appeal. At issue is whether the SIF is liable for a portion of Thompson's permanent total disability benefits.

At a hearing before an administrative law judge (ALJ), the SIF argued that Thompson's pre-existing non-industrial atherosclerotic condition contributed to his heart attacks and, therefore, precluded SIF liability. Dr. John Lambert, Thompson's treating physician, expressed the opinion that Thompson had atherosclerosis, or coronary artery heart disease. Dr. Lambert also concluded that the atherosclerosis probably made Thompson more susceptible to heart attacks.

At the conclusion of the hearing, the ALJ issued an order finding that it had not been established "to a reasonable medical probability that atherosclerotic disease contribut-

---

1. § 8–51–107(1), 3B C.R.S. (1986), provides:
   In cases of permanent total disability, the award shall be sixty-six and two-thirds percent of the average weekly wages of the injured employee and shall continue until death of such person so totally disabled but not in excess of the weekly maximum benefits specified in this article for injuries causing temporary total disability.

ed to the claimant's disability and the Subsequent Injury Fund cannot therefore be relieved of liability."[2] The ALJ ordered the SIF to pay for sixty percent of Thompson's permanent total disability benefits and the State Compensation Insurance Authority, Thompson's employer's insurer, to pay for the remaining forty percent.

The SIF then petitioned the Panel to review the ALJ's order. On July 15, 1988, the Panel affirmed. The Panel assumed that Thompson's atherosclerosis contributed to his heart attacks, but concluded that because a worker may be compensated for an industrial disability when employment conditions aggravate a pre-existing non-industrial condition to produce a disabling injury, the SIF was nonetheless liable.

The SIF appealed the Panel's order. The court of appeals affirmed in an unpublished opinion. *Subsequent Injury Fund v. Thompson,* No. 88CA1119 (Colo.App. Mar. 23, 1989).

The SIF argues that the court of appeals erred in concluding that *City & County of Denver v. Industrial Commission,* 690 P.2d 199 (Colo.1984) (hereinafter *Hatch* ), did not preclude SIF liability in this case. We disagree.

## II.

■ Section 8–51–106, 3B C.R.S. (1986), establishes the SIF.[3] The SIF was created to pay part of a worker's permanent total disability benefits when the disability resulting from a worker's industrial injury in combination with a previous industrial disability renders the worker permanently and totally disabled. Section 8–51–106(1), 3B C.R.S. (1986), provides in pertinent part:

(a) In a case where an employee has previously sustained permanent partial industrial disability and in a subsequent injury sustains additional permanent partial industrial disability and it is shown that *the combined industrial disabilities* render the employee permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment, then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund as is provided in this section.

(b) In addition to such compensation and after the completion of the payments therefor, the employee shall continue to receive compensation at his established compensation rate for permanent total disability until death out of a special fund to be known as the "subsequent injury fund", created for such purpose in the following manner. . . .

(Emphasis added.)

Before the SIF was established, the full responsibility rule was in effect. An employer who hired a partially disabled employee was required to pay the entire disability award if the worker suffered another industrial injury and was declared permanently and totally disabled as a result. *Hatch,* 690 P.2d at 202; *Colorado Fuel & Iron Corp. v. Industrial Comm'n,* 151 Colo. 18, 26, 379 P.2d 153, 157 (1962). The full responsibility rule discouraged employers from hiring partially disabled employees. *Hatch,* 690 P.2d at 202; *Sears, Roe-*

**2.** Dr. Lambert's opinions, expressed in a letter of December 14, 1987, provided the basis for the ALJ's finding.

**3.** Moneys to establish and sustain the fund are provided as follows:

For every compensable injury resulting in death wherein there are no persons either wholly or partially dependent upon the deceased, the employer or his insurance carrier, if any, shall pay to the division [of labor in the department of labor and employment] the sum of fifteen thousand dollars, to be deposit-

ed with the state treasurer, as custodian, into the subsequent injury fund. In the event there are only partially dependent persons dependent upon the deceased, the employer or his insurance carrier, if any, shall first pay such benefits to such partial dependents and the balance of the sum of fifteen thousand dollars, to be deposited with the state treasurer, as custodian, into the subsequent injury fund.

§ 8–51–106(1)(b), 3B C.R.S. (1986).

*buck & Co. v. Baca,* 682 P.2d 11, 15 (Colo. 1984). After the creation of the SIF, however, the employer of a worker who becomes permanently and totally disabled as the result of more than one industrial injury is required to pay only the portion of a worker's disability benefits that can be attributed to the injury suffered while working for the employer. The SIF pays the remainder of the disability award as well as ongoing compensation during the worker's life. *Hatch,* 690 P.2d at 202. Thereby, the SIF "provide[s] partially disabled workers with added opportunities for employment by relieving subsequent employers from the harsh results of the 'full responsibility' rule." *Id.*

In *Hatch,* we considered the applicability of section 8–51–106(1), 3B C.R.S. (1986), when both industrial and non-industrial disabilities exist. 690 P.2d at 202–03. Hatch suffered a series of job-related back injuries before 1980 that resulted in an award of eighteen percent permanent partial disability. In 1980, another work-related accident resulted in an additional twenty-five percent permanent partial disability. Hatch also suffered from several non-industrial health problems, including glaucoma, arthritis, asthma, alcohol abuse and obesity. The hearing officer found that the combination of these industrial and non-industrial disabilities rendered him permanently and totally disabled. *Id.* at 200. In determining that the SIF had no obligation to compensate Hatch for any portion of his disabilities, we gave careful reading to the statutory language of section 8–51–106(1)(a), 3B C.R.S. (1986). Because the statute provides that the SIF is liable only when a worker's "combined *industrial* disabilities" render the worker permanently and totally disabled, we held that the SIF is not liable when a worker's industrial and non-industrial disabilities combine to render the worker permanently and totally disabled. *Id.* at 202–03 (emphasis added).

The SIF argues that our reasoning in *Hatch* should be extended to preclude SIF liability in cases in which pre-existing non-industrial factors have contributed to a worker's admittedly industrial injuries.

We find such an extension to be unwarranted.

This case is distinguishable from *Hatch.* Hatch's total disability resulted from two partial industrial disabilities and several non-industrial disabilities. In that case we concluded that combined *industrial* disabilities had not rendered Hatch permanently and totally disabled as required by section 8–51–106(1)(a), 3B C.R.S. (1986). Here, Thompson's permanent and total disability is the result of two industrial disabilities, his two heart attacks. Unlike Hatch, Thompson does not have any non-industrial disabilities that have combined with his industrial disabilities to render him permanently and totally disabled. Although Thompson's pre-existing condition may have made him more susceptible to heart attacks, his heart attacks were *industrial* injuries that resulted in *industrial* disabilities that alone combined to render him permanently and totally disabled. Thompson's atherosclerosis did not disable him in any way independent of the two heart attacks.

■ The worker's compensation law of this state does not distinguish between industrial disabilities that are the result of employment-related aggravation of pre-existing conditions and those that are not. When a pre-existing condition is aggravated by an employee's work, the resulting disability is a compensable industrial disability. *Colorado Fuel & Iron Corp. v. Industrial Comm'n,* 152 Colo. 25, 30, 380 P.2d 28, 30 (1963); *Industrial Comm'n v. Newton Co.,* 135 Colo. 594, 601, 314 P.2d 297, 301 (1957); *Vanadium Corp. v. Sargent,* 134 Colo. 555, 566–67, 307 P.2d 454, 459 (1957); *Kamp v. Disney,* 110 Colo. 518, 522, 135 P.2d 1019, 1021 (1943); *Seifried v. Industrial Comm'n,* 736 P.2d 1262, 1263 (Colo.App.1986) ("if a disability were 95% attributable to a pre-existing, but stable, condition and 5% attributable to an occupational injury, the resulting disability is still compensable if the injury has caused the dormant condition to become disabling."). Distinguishing between industrial disabilities that resulted from the employment-related aggravation of pre-existing conditions and those that did not will often be difficult. Such a distinction would also severe-

ly limit the protection provided by the SIF by virtually excluding from coverage whole classes of disabilities that are almost always preceded by non-industrial conditions.[4] We decline to extend the reasoning of *Hatch* to incorporate this distinction because nothing in the language of section 8–51–106(1) suggests that we should adopt, for purposes of determining SIF liability, a distinction long held inapplicable in determining an employee's right to compensation. Moreover, such a distinction would seriously frustrate the SIF's purpose of providing added employment opportunities for partially disabled workers.[5]

### III.

Accordingly, we affirm the judgment of the court of appeals.

4. In this case a medical expert wrote, "[i]t is commonly felt that some degree of atherosclerotic coronary artery disease exists in all patients who have had myocardial infarctions." *See also T & T Loveland Chinchilla Ranch v. Bourn*, 173 Colo. 267, 273, 477 P.2d 457, 460 (1970) ("Frequently in both heart cases and back cases, there are pre-existing conditions or diseases which contribute to the disability or death.").

5. We recognize that in *Hatch* we expressed the conclusions that § 8–51–106(1)(a) "precludes compensation by the SIF when nonindustrial factors contribute to the claimant's total disability" and that "[n]o provision is made for nonindustrial factors or preexisting conditions." 690 P.2d at 203. As explained earlier in this opinion, however, the fact situation in *Hatch* involved both industrial and non-industrial disabilities that combined to make the employee permanently and totally disabled. It was in this context that we referred to a nonindustrial injury as "contributing to" a claimant's total disability.