**SUBSEQUENT INJURY FUND, Petitioner,**

v.

**STATE COMPENSATION INSURANCE AUTHORITY; the Industrial Claim Appeals Office of the State of Colorado; Department of Natural Resources; and Elbert Larry Baker, Respondents.**

**No. 88SC576.**

Supreme Court of Colorado, En Banc.

June 18, 1990.

As Modified on Denial of Rehearing July 9, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, First Asst. Atty. Gen., Denver, for petitioner.

Paul Tochtrop, Denver, for respondents State Compensation Ins. Authority and Dept. of Natural Resources.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Laura E. Udis, First Asst. Atty. Gen., Denver, for respondents The Indus. Claim Appeals Office of the State of Colo.

Dawes and Crane, P.C., Robert C. Dawes, Durango, for respondent Elbert Larry Baker.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals' decision in *Subsequent Injury Fund v. State Compensation Insurance Authority*, 768 P.2d 751 (Colo.App.1988). The issue is whether the obligation to pay permanent disability benefits to which an employee is entitled under the workers' compensation laws shall fall upon the employer and its insurer or upon the Subsequent Injury Fund (SIF). The court of appeals held that the SIF was liable for all permanent total disability benefits exceeding ten thousand dollars owed to an employee rendered permanently and totally disabled by asbestosis and resulting lung cancer. The court of appeals held the SIF liable despite the employee's history of smoking, which made him more susceptible to lung cancer. We affirm the judgment of the court of appeals.

I.

In November 1984, Elbert Larry Baker consulted Dr. Chester Wigton, complaining of shortness of breath. Chest x-rays revealed that Baker had asbestosis in both lungs and cancer in his right lung. In December 1984, Dr. Thomas G. McCulloch removed the upper lobe of Baker's right lung.

Baker filed a claim for workers' compensation benefits. An administrative law judge (ALJ) held a hearing on the claim on February 11, 1987. At the hearing, evidence established that Baker had been exposed to asbestos at several different jobs. He was first exposed while working as a boiler fireman in the navy. Thereafter, he was exposed while employed as a miner. Baker was also exposed to asbestos on at least two occasions while working for his most recent employer, the Colorado Department of Natural Resources: when replacing flooring at the Rifle Fish Hatchery and when demolishing the offices at the Durango Fish Hatchery.

Baker also testified at the hearing that from 1950 to December 1984, he smoked between a pack and a pack and a half of cigarettes a day. After examining Baker subsequent to his surgery, Dr. Lawrence Repsher concluded that Baker's pulmonary and pleural asbestosis combined with his long history of heavy cigarette smoking caused the bronchogenic cancer in the upper right lobe of Baker's lung. Repsher stated that Baker has "pulmonary and pleural asbestosis and that his lung cancer

was at least partially caused by his exposure to asbestos."

The ALJ found Baker to have been permanently and totally disabled as a result of the occupational disease asbestosis. The ALJ ordered the employer and its insurer to pay for Baker's necessary medical expenses and $315.98 per week for disability compensation until these payments for expenses and compensation equal $10,000.00. The ALJ ordered the SIF to make all payments in excess of that amount.

The Industrial Claim Appeals Office (the Panel) affirmed the ALJ's order. The court of appeals, in turn, affirmed the Panel's decision. *Subsequent Injury Fund v. State Compensation Ins. Authority,* 768 P.2d 751 (Colo.App.1988). We granted certiorari to consider (1) whether the SIF is liable for disability benefits based on malignancies caused by asbestosis as well as for asbestosis itself, and (2) whether the SIF is liable when a claimant becomes disabled as a result of an occupational disease caused by a combination of industrial and non-industrial factors.[1] We shall consider each of these issues in turn.

## II.

■ First, we consider whether section 8–51–112(2), 3B C.R.S. (1986), governs disabilities resulting from malignancies caused by asbestosis as well as from the asbestosis itself. The SIF contends that under section 8–51–112(2), it is potentially liable for contribution only when an employee's disability results from asbestosis, not when it results from cancer caused by asbestosis.[2]

Section 8–51–112(2) describes the sources of disability that can result in SIF liability as follows:

In any case where an employee of an employer becomes disabled from silicosis, asbestosis, anthracosis, or poisoning or disease caused by exposure to radioactive materials, substances, or machines or to fissionable materials, *or any type of malignancy caused thereby* .... [certain liabilities may be imposed on the SIF if other specified circumstances exist].[3]

(Emphasis added.)

We agree with the court of appeals that the phrase "or any type of malignancy caused thereby" should be read to refer to all of the previously listed diseases and not merely to exposure to radioactive or fissionable materials. *See* § 2–4–214, 1B C.R.S. (1980) (rejecting the rule of statutory construction that qualifying words and phrases, where no contrary intention appears, are construed to refer to the last antecedent to which they are closely connected). There is no reason to believe that the legislature wanted to make the SIF liable for cancer resulting from exposure to radioactive material but not for cancer resulting from the other occupational diseases enumerated in this section.

The SIF argues, however, that the legislative history of section 8–51–112(2) leads to a contrary conclusion. Section 8–51–112(2) was added to the workers' compensation act in its present form in 1975. Ch. 71, § 36, § 8–51–112, 1975 Colo. Sess. Laws 291, 304. Prior to that time, the SIF was liable for benefits exceeding $5,000.00 in cases where an employee became totally disabled from silicosis, asbestosis or anthracosis and the employee had been injuriously exposed to such diseases during a

---

**1.** Baker's entitlement to compensation is not at issue in this case. The issues to be resolved relate to the question whether compensation will be paid by the State Compensation Insurance Authority as insurer for Baker's last employer or by the SIF.

**2.** § 8–51–106, 3B C.R.S. (1986), establishes the SIF. The SIF was created to pay part of a worker's permanent total disability benefits when the worker is rendered permanently and totally disabled as a result of the combination of industrial injuries incurred during different em-

ployments or as a result of certain industrial diseases caused by industrial exposures during different employments. *See Subsequent Injury Fund v. Thompson,* 793 P.2d 576, 578 (Colo. 1990). By paying part of the worker's benefits, the SIF eliminates some of the harsh effects of the full responsibility rule and increases the employment opportunities available to partially disabled and previously exposed workers. *See id.* at 578–579.

**3.** *See* part III of this opinion for the provisions of § 8–51–112(2) imposing liability on the SIF.

prior employment. § 81–18–13, 4 C.R.S. (1963). This statute made no specific mention of malignancies caused by such diseases. Also prior to adoption of section 8–51–112(2), another section of the statute defined "occupational disease" for the purpose of payment of disability benefits as including "[p]oisoning or disease caused by exposure to radioactive materials, substances, or machines, or fissionable materials, or any type of malignancy caused thereby." § 81–18–9(23), 4 C.R.S. (1963). In 1975, the diseases described in both section 81–18–9(23) and section 81–18–13 were included in the present list of diseases set forth in section 8–51–112(2), which give rise to a contribution obligation by the SIF in specified circumstances. The SIF would have us conclude that the reference to "malignancy caused thereby" should be limited to the diseases with which that language was formerly associated in section 81–18–9(23) of the 1963 statute. The SIF cites no legislative history in support of this proposition and we have discovered none. We reject the SIF's proposed construction, which rests on the dubious assumptions that total disability "from silicosis, asbestosis or anthracosis" under section 81–18–13 did not extend to disability from malignancies resulting from those diseases and that the legislature intended that same limited construction when those diseases were added to the list of diseases triggering potential SIF liability under section 8–51–112(2). Rather, we believe the language should be given its most natural meaning and the final modifier should be treated as applicable to all that goes before.

### III.

■ Next, we consider whether the SIF is liable for contribution despite Baker's history of smoking. In general, liability for compensation for disabilities resulting from occupational disease falls on the employer in whose employment the employee was last injuriously exposed. This rule is set forth in section 8–51–112(1), 3B C.R.S. (1986), as follows:

Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier. In the case of silicosis, asbestosis, or anthracosis, the only employer and insurance carrier liable shall be the last employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide (SiO2) dust, asbestos dust, or coal dust on each of at least sixty days or more and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer.

■ An exception to the rule limits the liability of the last employer and imposes liability for the excess on the SIF with respect to certain occupational diseases in certain circumstances. § 8–51–112(2), 3B C.R.S. (1986). It is the meaning and scope of that exception that we must determine in order to decide whether the SIF is liable for contribution in the present case.

Section 8–51–112(2), 3B C.R.S. (1986), provides in pertinent part:

In any case where an employee of an employer becomes disabled from … asbestosis, … or any type of malignancy caused thereby, or in the event death results from … asbestosis, … and, if such employee has been injuriously exposed to such diseases while in the employ of another employer during his lifetime, the last employer or his insurance carrier, if any, shall be liable only for compensation and medical benefits as provided by articles 40 to 54 of this title, including funeral expenses and death benefits, up to the amount of ten thousand dollars. In addition to such benefits, such employee or, in the event of death, his dependents shall receive additional benefits equivalent to the difference between the amount paid by the last employer or his insurance carrier, if any, and the total amount of benefits payable under said articles. Such additional benefits shall be paid out of the subsequent

injury fund created by the provisions of section 8–51–106.

Under section 8–51–112(2), the SIF is liable for contribution "where an employee ... becomes disabled from ... asbestosis ... or any type of malignancy caused thereby" if the employee has been exposed to asbestos while employed by a previous employer. It is not disputed that Baker was exposed to asbestos during a previous employment. The SIF contends, however, that it is not liable for any portion of Baker's benefits because Baker was not disabled *solely* because of occupational asbestos exposure. The SIF asserts that Baker's lung cancer was caused in part by a non-occupational factor, cigarette smoking.[4]

■ The language of section 8–51–112(2), when read in light of the general principles governing compensation for occupational diseases, indicates an intent to impose SIF liability in this case. Section 8–51–112(2) applies to employees who become disabled from asbestosis or resulting malignancies. As a general rule an employee is entitled to compensation for an occupational disease, even if that disease is caused by a combination of industrial and non-industrial factors. "[T]he fact of a preexisting hypersensitivity or secondary cause does not defeat a claim for occupational disease unless it can be shown that a non-industrial cause was an equally exposing stimulus." *Hall v. Industrial Claim Appeals Office*, 757 P.2d 1132, 1133 (Colo. App.1988) (citing § 8–41–108(3), 3B C.R.S. (1986), defining "occupational disease");[5] *accord IML Freight, Inc. v. Industrial Comm'n*, 676 P.2d 1205, 1208 (Colo.App. 1983); *Denver v. Hansen*, 650 P.2d 1319, 1321 (Colo.App.1982). The language of

section 8–51–112(2) does not suggest that a different rule should be applied in determining whether an employee has been "disabled from" one of the diseases listed in that section for the purpose of resolving the question of SIF liability.

The SIF contends that our holding in *City & County of Denver v. Industrial Commission*, 690 P.2d 199 (Colo.1984) (hereinafter *"Hatch"*), that the SIF is not liable under section 8–51–106(1)(a), 3B C.R.S. (1986), when disability results from a combination of industrial and non-industrial *injuries*, implies that the SIF should not be liable under section 8–51–112(2) when industrial and non-industrial factors combine to produce a disabling *occupational disease*. Initially, the SIF's reading of *Hatch* is overly broad. In *Hatch*, we held that when industrial injuries combine with non-industrial injuries to render an employee permanently and totally disabled the SIF is not liable under section 8–51–106(1)(a). We have refused to extend *Hatch* to preclude SIF liability in cases in which compensable industrial injuries combine to render the employee permanently and totally disabled even though non-industrial factors made the employee more susceptible to those industrial injuries. *Subsequent Injury Fund v. Thompson*, 793 P.2d 576 (Colo. 1990).

Furthermore, the applicability of our holding in *Hatch* to this case is questionable because the statute governing SIF liability for industrial injuries is very different from the statute governing SIF liability for occupational disease. *See Denver v. Hansen*, 650 P.2d at 1322 ("The specific provisions of [§ 8–51–112(2), concerning occupational disease,] take precedence over the general provisions of § 8–51–106(1)(a),

---

4. The parties dispute whether the ALJ's findings must be read as determining that cigarette smoking did not contribute to the development of Baker's lung cancer, and if so, whether the record supports that finding. The issue on which we granted certiorari assumes that cigarette smoking was determined to have been a contributing factor, and we assume that to be true for the purpose of this opinion. The record contains no finding or evidence that Baker's cancer would have occurred in absence of the asbestosis.

5. § 8–41–108(3) provides:

"Occupational disease" means a disease which results directly from the employment or the conditions under which work was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause and which does not come from a hazard to which the worker would have been equally exposed outside of the employment.

C.R.S.1973 (1981 Cum.Supp.) applicable to 'injury' "). The statutory provision at issue in *Hatch,* section 8–51–106(1)(a), specifies that "combined industrial disabilities" must render the employee permanently and totally disabled in order for the SIF to be liable.[6] Section 8–51–112(2), however, enumerates certain occupational diseases, including asbestosis and its resulting malignancies, and makes the SIF liable if an employee has been injuriously exposed to that disease during more than one employment. Section 8–51–112(2) does not limit SIF liability for benefits to persons disabled by asbestosis to those who have only been exposed to asbestos in the employment context, much less to those who, due to a non-industrial factor such as smoking, are more susceptible to the lung cancer that can result from asbestosis. This reflects a legislative intention to make section 8–51–112(2) applicable to all cases involving disability resulting from asbestosis caused by occupational asbestos exposure during more than a single employment.

## IV.

In sum, we hold that the SIF is liable for contribution when an employee is disabled from asbestosis and lung cancer caused by occupational asbestos exposure during more than one position of employment, even if the employee's history of smoking made lung cancer more likely. Accordingly, we affirm the judgment of the court of appeals.

**6.** § 8–51–106(1)(a) provides:

In a case where an employee has previously sustained permanent partial industrial disability and in a subsequent injury sustains additional permanent partial industrial disability and it is shown that the combined industrial disabilities render the employee permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment, then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund as is provided in this section.