**CLIMAX MOLYBDENUM COMPANY and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Stephen WALTER, the Industrial Claim Appeals Office and Director, Division of Labor, Respondents.**

**No. 90SC481.**

Supreme Court of Colorado, En Banc.

June 17, 1991.

Rehearing Denied July 9, 1991.

John Berry, Paul Tochtrop, Denver, for petitioner Colorado Compensation Ins. Authority.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Mary Karen Maldonado, First Asst. Atty. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondents.

Justice QUINN delivered the Opinion of the Court.

The question in this case concerns the proper method for apportioning liability between a workers' compensation insurer and the Subsequent Injury Fund for workers' compensation benefits owed to an employee who is permanently and totally disabled as a result of the combined effects of two industrial injuries and an occupational disease. In an unpublished opinion, *Climax Molybdenum Co. v. Walter* (No. 89CA1305, Colo.App. June 7, 1990), the court of appeals held that, because the last industrial disability sustained by the worker, Stephen Walter, was caused by the occupational disease of silicosis resulting from an injurious exposure to silicon dust during his employment with Climax Molybdenum Company, the allocation of liability for workers' compensation benefits was controlled by section 8–51–112(1), 3B C.R.S. (1986), which imposes workers' compensation liability upon the last employer in the case of an industrial disability caused by an occupational disease, rather than section 8–51–106(1)(a), 3B C.R.S. (1986), which allocates workers' compensation liability between the employer and the Subsequent Injury Fund when a worker who previously sustained permanent partial industrial disability becomes permanently and totally disabled as a result of a subsequent industrial injury.[1] Based on that analysis, the sole responsibility for Walter's permanent total disability was imposed upon the Colorado Compensation Insurance Authority, which was the workers' compensation insurer of Climax Molybdenum Company (hereinafter collectively referred to as Climax). We hold that Climax is liable only for that portion of Walter's permanent total disability attributable to his occupational disease and that the Subsequent Injury Fund is responsible for the remaining portion of Walter's permanent total disability. We accordingly reverse the judgment of the court of appeals.

I.

Because the question in this case centers on which of two statutes controls the allocation of workers' compensation liability for an employee's permanent total disability resulting from a combination of two industrial injuries and an occupational disease, a brief review of the statutory scheme is appropriate before outlining the pertinent facts.

The Workers' Compensation Act defines the term "injury" to include "disability or death resulting from accident or occupational disease." § 8–41–108(2), 3B C.R.S. (1986). This statutory definition of injury was adopted by the General Assembly in 1975. Ch. 71, sec. 5, § 8–41–108(2), 1975 Colo.Sess.Laws 291, 293. Prior to 1975, the Colorado Occupational Disease Disability Act, which was enacted in 1945, ch. 163, sec. 1–33, 1945 Colo.Sess.Laws 432–446, provided for workers' compensation benefits for certain occupational diseases, including silicosis. As a result of this separate statutory scheme for occupational diseases, the pre–1975 version of the Workers' Compensation Act provided that the term "injury" should not be construed to include disability or death due to occupational disease. § 8–41–108(3), 3 C.R.S. (1973). In 1975, however, the General Assembly repealed the Occupational Disease Disability Act, ch. 71, sec. 62, 1975 Colo.Sess.Laws 291, 311, and incorporated into the Workers' Compensation Act a definition of "inju-

---

1. The Colorado Workers' Compensation Act was repealed and reenacted with substantial amendments, with an effective date of July 1, 1990. Ch. 62, §§ 1–79, 1990 Colo.Sess.Laws 468–576. Section 8–51–106, 3B C.R.S. (1986), was repealed and reenacted as section 8–46–101, 3B C.R.S. (1990 Supp.). Section 8–51–112, 3B C.R.S. (1986), was repealed and reenacted as section 8–41–304, 3B C.R.S. (1990 Supp.). Because the operative events in this case occurred prior to July 1, 1990, our citations in this opinion are to the pre–1990 version of the Workers' Compensation Act.

ry" that expressly included disability or death resulting from an occupational disease.

The Workers' Compensation Act defines the term "accident" to mean an unforeseen, unexpected, undesigned, or unusual event or occurrence, § 8–41–108(1), 3B C.R.S. (1986), and defines the term "occupational disease" as follows:

[A] disease which results directly from the employment or the conditions under which work was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause and which does not come from a hazard to which the worker would have been equally exposed outside of the employment.

§ 8–41–108(3), 3B C.R.S. (1986).

■ Section 8–51–106, 3B C.R.S. (1986), establishes a statutory fund called the Subsequent Injury Fund, which was originally created in 1945 as part of the Workers' Compensation Act. Ch. 164, sec. 1–3, 1945 Colo.Sess.Laws 447–48. The purpose of this fund is to provide employment opportunities for partially disabled persons by relieving employers who employ such persons from the full responsibility for permanent total disability resulting from a subsequent disabling industrial injury sustained while working for the employer. *See Subsequent Injury Fund v. Thompson,* 793 P.2d 576, 578–79 (Colo.1990); *Sears, Roebuck & Co. v. Baca,* 682 P.2d 11, 15 (Colo. 1984); *Horizon Land Corp. v. Industrial Comm'n,* 34 Colo.App. 178, 181, 524 P.2d 638, 640 (1974). Prior to the enactment of this statute, an employer "who hired a partially disabled employee was required to pay the entire disability award if the worker suffered another industrial injury and was declared permanently and totally disabled as a result." *Thompson,* 793 P.2d at 578; *see City and County of Denver v. Industrial Comm'n,* 690 P.2d 199, 202 (Colo.1984). Section 8–51–106(1)(a) relieves the employer from the full responsibility for permanent total disability by providing that when an employee has previously sustained permanent partial industrial disability and becomes permanently and totally disabled as a result of additional permanent partial industrial disability sustained in a subsequent injury, "the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the [S]ubsequent [I]njury [F]und."

In addition to establishing the Subsequent Injury Fund, the General Assembly, as part of the Occupational Disease Disability Act of 1945, enacted a "full responsibility rule." Ch. 163, sec. 13, 1945 Colo.Sess. Laws 432, 438. This statutory rule states that "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier." *Id.* In the case of certain occupational diseases, including silicosis, the statutory scheme imposes liability upon the employer in whose employ the worker was last exposed to specific harmful substances—silicon dioxide dust in the case of silicosis—on each of at least sixty days or more, or the employer's insurer. *Id.* The "full responsibility rule" for occupational diseases was subsequently incorporated into section 8–51–112(1), 3B C.R.S. (1986), of the Workers' Compensation Act when the Occupational Disease Disability Act was repealed in 1975. Ch. 71, sec. 36, § 8–51–112, 1975 Colo.Sess.Laws 291, 304. In recognition of the fact that the full responsibility rule might deter an employer from hiring a person partially disabled by an occupational disease, section 8–51–112(2), 3B C.R.S. (1986), states that if an employee has been previously disabled from silicosis, workers' compensation benefits shall be apportioned as follows:

[T]he last employer or his insurance carrier, if any, shall be liable only for

compensation and medical benefits as provided by articles 40 to 54 of this title, including funeral expenses and death benefits, up to the amount of ten thousand dollars. In addition to such benefits, such employee or, in the event of death, his dependents shall receive additional benefits equivalent to the difference between the amount paid by the last employer or his insurance carrier, if any, and the total amount of benefits payable under said articles. Such additional benefits shall be paid out of the [S]ubsequent [I]njury [F]und created by the provisions of section 8–51–106.

## II.

The facts are not in dispute. Walter worked for Climax in a variety of manual labor jobs from 1961 to 1985 and suffered three industrial injuries that arose out of and in the course of his employment. The first injury occurred in October 1984, while Walter was working as a hang-up man and injured his right shoulder. As a result of that injury, Walter underwent surgery and sustained a permanent partial disability that precluded him from doing most of the extremely arduous tasks which he had previously performed at Climax. In July 1985 Walter sustained a partial hearing loss in both ears while working at Climax. The final industrial disability was caused by the occupational disease of silicosis, which arose from Walter's work near underground blasting operations.

An administrative law judge found that Walter was permanently and totally disabled and allocated his permanent total disability as follows:

One-third of [Walter's] current disability is due to his hearing problems, one-third of his current disability is due to his shoulder problems, and one-third of his disability is due to his pulmonary problems. Concerning the one-third of [Walter's] disability attributable to his pulmonary problems, seventy percent of that one-third is related to silicosis and thirty percent of that one-third is related to emphysema and cigarette smoking.

In apportioning liability for Walter's permanent total disability, the judge concluded that inasmuch as Walter "was ultimately rendered permanently and totally disabled by the occupational disease of silicosis, Subsequent Injury Fund liability can only properly attach in this case if that liability is created by Section 8–51–112," and because Walter's entire injurious exposure to silicosis occurred while he was an employee of Climax, "there is no statutory basis for assessing liability against the Subsequent Injury Fund pursuant to Section 8–51–112." Accordingly, the judge assessed full responsibility for Walter's permanent total disability upon Climax.[2]

The Industrial Claim Appeals Panel affirmed the order of the administrative law judge, and the court of appeals, in turn, affirmed the panel's order. The court of appeals reasoned that, because Walter's last disabling injury was silicosis resulting solely from an injurious exposure to silicon dust during his employment with Climax, and because he had not been previously exposed to such hazard while in the employ of another employer, the full responsibility rule of section 8–51–112 mandated that Cli-

---

**2.** Walter had filed three separate workers' compensation claims in 1985, and the claims were consolidated for hearing. Upon determining that Walter was permanently and totally disabled, the administrative law judge ordered Climax to pay Walter $315.98 per week from March 7, 1988, and continuing for the rest of his life. After the entry of this order, the administrative law judge in a supplemental ruling considered the court of appeals' decision in *Subsequent Injury Fund v. State Compensation Insurance Authority*, 768 P.2d 751 (Colo.App.1988), *aff'd* 793 P.2d 580 (Colo.1990), which held that, pursuant to section 8–51–112(2), the Subsequent Injury Fund was liable for all permanent and

total disability exceeding $10,000 in the case of a worker who had been exposed to asbestos at several different jobs and was permanently and totally disabled by asbestosis and lung cancer, even though the employee's long history of smoking had made him more susceptible to lung cancer which, however, was not caused by the smoking. In the instant case, the administrative law judge held in the supplemental ruling that, in contrast to the facts in the court of appeals' decision under consideration, Walter's sole exposure to silicosis occurred during his employment with Climax and, hence, Climax alone was liable for his permanent total disability.

max bear total responsibility for Walter's permanent total disability.[3]

■ We granted Climax's petition for certiorari to consider whether the court of appeals correctly held that the Subsequent Injury Fund was not responsible for any portion of workers' compensation benefits, when, as here, an employee's permanent total disability is due to a combination of two industrial injuries and an occupational disease. We hold that the statutory provisions of section 8–51–106(1)(a) relating to Subsequent Injury Fund liability can be harmonized with the statutory provisions of section 8–51–112 relating to occupational diseases, with the result that Climax is responsible for that portion of Walter's permanent total disability attributable to his occupational disease and the Subsequent Injury Fund is responsible for that portion attributable to industrial injuries not involving an occupational disease.

### III.

Climax argues that the provisions of 8–51–106(1)(a) relating to Subsequent Injury Fund liability should be applied to an employee who has been totally and permanently disabled even though one of the industrial disabilities is caused by an occupational disease. The Division of Labor,[4] on the other hand, contends that the provisions of section 8–51–112 relating to occu-

pational diseases mandate that when an employee sustains permanent total disability as a result of a combination of industrial injuries and an occupational disease during one employment, the employer is solely responsible for the employee's permanent total disability. Because neither the statutory provisions of section 8–51–106(1)(a) relating to Subsequent Injury Fund liability nor the provisions of section 8–51–112 dealing with occupational diseases directly address the apportionment of workers' compensation liability for an employee's permanent total disability caused by a combination of industrial injuries and an occupational disease, we must resort to basic rules of statutory construction in seeking an answer to the apportionment issue.

### A.

■ A court's primary task in construing the statute is to give effect to the legislative purpose underlying the statutory enactment. *E.g., Charnes v. Central City Opera House Ass'n,* 773 P.2d 546, 550 (Colo.1989); *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984). In an effort to determine legislative intent, we first look to the statutory language and give words and phrases their plain and ordinary meaning. *E.g., Colorado Common Cause v. Meyer,* 758

3. In resolving this case, the court of appeals relied on its decision in *Gardner Denver v. Hansen,* 650 P.2d 1319 (Colo.App.1982). Such reliance, in our view, was misplaced. The employee in *Gardner Denver* was permanently and totally disabled as a result of an occupational disease resulting from inhalation of smoke fumes, which in turn aggravated a preexisting obstructive pulmonary disease caused by irritants to which he apparently had been exposed while working at a prior employment with the same employer. The employer and its insurer contended that the Subsequent Injury Fund should have been joined and held liable for that portion of the worker's disability that preexisted the occupational disease sustained by the worker in his most recent employment. In rejecting this claim, the court of appeals initially noted that the Industrial Commission found that the employee had no prior permanent industrial disability and then emphasized that section 8–51–112(2) apportions liability between the last employer and the Subsequent Injury Fund in the case of certain occupational diseases, none

of which had been incurred by the employee. Because the employee had no prior existing industrial disability and did not contract any of the occupational diseases included in section 8–51–112(2), the court of appeals held that, notwithstanding the statutory definition of injury as inclusive of an occupational disease, the full responsibility rule of section 8–51–112(1) controlled over the general provisions of Subsequent Injury Fund liability in section 8–51–106(1)(a). In contrast to the factual situation in *Gardner Denver,* we deal in the instant case with a permanent total industrial disability caused by the combined effects of two industrial injuries and an occupational disease, all of which were sustained during one employment. *Gardner Denver,* therefore, is neither factually nor analytically similar to the case before us.

4. We refer to the respondents, the Division of Labor, the Industrial Claim Appeals Panel, and Stephen Walter, collectively as the Division of Labor.

P.2d 153, 160 (Colo.1988); *People v. Guenther*, 740 P.2d 971, 975 (Colo.1987). As a general rule, a special or specific statutory provision prevails over a general provision unless the general provision is later in time and the legislature has manifested a clear intent that the general provision should prevail. § 2–4–205, 1B C.R.S. (1980). In addition, we are obliged to construe an entire statutory scheme in a manner that gives consistent, harmonious, and sensible effect to all of its parts. *E.g., Colorado Common Cause*, 758 P.2d at 160; *People v. District Court*, 713 P.2d 918, 921 (Colo. 1986); *see* § 2–4–201(1)(b), 1B C.R.S. (1980). It also must be presumed that the General Assembly in enacting a statute intended a just and reasonable result. § 2–4–201(1)(c), 1B C.R.S. (1980).

### B.

Turning initially to the apportionment of responsibility for that portion of Walter's disability attributable to the occupational disease of silicosis, we read the plain terms of section 8–51–112(1) as imposing full responsibility upon Climax for that industrial disability. Section 8–51–112(1) expressly states that in the case of silicosis the only employer and insurer liable for any industrial disability resulting from that disease "shall be the last employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide (SiO2) dust ... on each of at least sixty days or more and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer." Although the term "injury" in the Workers' Compensation Act includes any disability resulting from an accident or occupational disease, § 8–41–108(2), 3B C.R.S. (1986), and the Subsequent Injury Fund liability of section 8–51–106(1)(a) is cast in terms of a "subsequent injury," the manifest purpose of section 8–51–112 is to establish the liability of an employer, or the employer's insurer, for an industrial disability attributable to that form of "injury" categorized as an occupational disease.

We view section 8–51–112(1) as an exception to the general apportionment provi-

sions of section 8–51–106 dealing with Subsequent Injury Fund liability for combined injuries resulting in permanent total disability. The full responsibility rule created by section 8–51–112(1), therefore, specifically applies to that portion of permanent total disability attributable to an occupational disease incurred by an employee who was not previously exposed to such disease while in the employ of some other employer. We accordingly hold that the statutory provisions of section 8–51–112(1) are controlling on the liability of an employer or the employer's insurer for that portion of a worker's permanent total disability attributable to an occupational disease which, in combination with other industrial disabilities, contributes to the worker's permanent total disability.

### C.

We next consider whether that portion of Walter's permanent total disability attributable to industrial injuries not involving an occupational disease is governed by the statutory provisions relating to occupational diseases or the statutory provisions relating to Subsequent Injury Fund liability. The court of appeals reasoned that because section 8–51–112(2) permits apportionment of liability between the last employer and the Subsequent Injury Fund only when an employee becomes totally disabled from silicosis and has been injuriously exposed to such disease while in the previous employ of another employer, and because Walter's silicosis resulted solely from injurious exposure during his employment at Climax, there was no basis to apportion liability between Climax and the Subsequent Injury Fund. We reach a contrary result.

The General Assembly obviously was aware of the statutory provisions relating to Subsequent Injury Fund liability and those relating to occupational disease liability when in 1975 it enacted section 8–41–108(2) of the Workers' Compensation Act and included an occupational disease within the definition of "injury." If the General Assembly intended to exclude an occupational disease from Subsequent Injury Fund liability, it could easily have done

so by amending section 8–51–106(1)(a) of the Workers' Compensation Act to accomplish that result. We view the legislative decision to define the term "injury" as inclusive of an occupational disease, without concomitantly amending those provisions of section 8–51–106(1)(a) dealing with Subsequent Injury Fund liability in cases of subsequent "injury" resulting in permanent total disability, as a deliberate legislative decision to include within Subsequent Injury Fund liability those cases where an employee has previously sustained a permanent partial industrial disability and as a result of a subsequent occupational disease becomes permanently and totally disabled.

We believe such an interpretation of the statutory scheme is consistent with the statutory goal of providing employment opportunities for partially disabled persons by relieving an employer of the full responsibility for permanent total disability resulting from a subsequent industrial injury, whether that subsequent injury be an occupational disease or otherwise. We acknowledge, of course, that in the instant case the employee's two industrial injuries and the occupational disease occurred during the course of one employment. *See Thompson,* 793 P.2d at 578–79; *City and County of Denver,* 690 P.2d at 202. The fact remains, however, that an employer would be most reluctant to hire or retain a worker with permanent partial disability if the employer were to be burdened with the full responsibility for the worker's permanent total disability resulting from a subsequent industrial injury or occupational disease.

Clearly, if a worker during the course of employment with one employer sustains two or more industrial injuries not involving an occupational disease, the last of which combines with the prior injury or injuries to cause the worker to be permanently and totally disabled, there is no question that section 8–51–106(1)(a) would render the employer responsible only for that portion of the disability resulting from the last injury and the Subsequent Injury Fund would be responsible for the remaining portion of the permanent total disability. This is so because the apportionment

of liability between the employer and the Subsequent Injury Fund for permanent total disability resulting from the combined effects of sequential industrial injuries is not conditioned on a previously existing industrial disability sustained while in the employ of some other employer. It would be the antithesis of a just and fair result, in our view, were we to construe the Workers' Compensation Act to impose exclusive responsibility for permanent and total disability upon the sole employer when an occupational disease, which also is an "injury" for which the employer is solely responsible for any resulting industrial disability, combines with other industrial injuries to cause the worker to be permanently and totally disabled. We decline to adopt such a construction.

Our interpretation of the statutory scheme relating to Subsequent Injury Fund liability is not at odds with the text of section 8–51–112 dealing with occupational diseases. Subsection (1) of section 8–51–112 imposes full responsibility for the occupational disease of silicosis on the last employer, or the employer's insurer, only in those cases where the worker was last injuriously exposed to the hazards of silicon dust on each of at least sixty days during his employment with the last employer. Subsection (2) of this statute apportions liability for workers' compensation benefits between the last employer and the Subsequent Injury Fund only in those cases where the employee becomes disabled from silicosis and has been injuriously exposed to such a disease while in the employ of another employer. Nothing in the text of either subsection (1) or (2) of section 8–51–112 manifests a legislative intent to include within the full responsibility rule those cases where an employee becomes permanently and totally disabled as a result of the combined effects of an industrial injury or injuries not involving an occupational disease and a subsequent occupational disease.

Simply stated, we conclude that section 8–51–106(1)(a) and section 8–51–112 of the Workers' Compensation Act are not irreconcilable so as to preclude Subsequent In-

jury Fund liability for permanent total disability caused by the combined disabling effects of industrial injuries and an occupational disease. On the contrary, both statutes can readily be interpreted in a manner that gives a consistent, harmonious, and sensible effect to each and achieves a just and reasonable result consistent with their respective purposes.[5]

## IV.

In summary, we hold that where a worker's permanent total disability has been caused by the combination of two or more injuries and the subsequent occupational disease of silicosis, liability for that portion of the permanent total disability attributable to silicosis is controlled by section 8–51–112(1). Pursuant to section 8–51–112(1), the employer in whose employ the worker was last injuriously exposed to the hazards of silicosis, or the employer's insurer, is solely responsible for that portion of the worker's disability attributable to the silicosis. We also hold that liability for the remaining portion of the permanent total disability attributable to other industrial injuries not involving an occupational disease is governed by section 8–51–106(1)(a). Pursuant to section 8–51–106(1)(a), the Subsequent Injury Fund is responsible for that part of the worker's permanent total disability attributable to those other prior industrial injuries not involving an occupational disease. It follows that Climax is responsible for one third of Walter's permanent total disability attributable to silicosis and that the Subsequent Injury Fund is responsible for the balance of his permanent total disability.

The judgment of the court of appeals is accordingly reversed and the case is remanded to that court with directions to return the case to the Industrial Claim Appeals Panel for the entry of an order consistent with the views herein expressed.

---

**5.** Subsequent to the court of appeals' decision in this case, a different division of that court ruled in *Subsequent Injury Fund v. Grant,* 812 P.2d 1183 (Colo.App.1990), that the Subsequent Injury Fund was liable for a portion of permanent and total disability benefits when a worker was rendered permanently and totally disabled from the combined effects of a prior industrial injury to his back, which accounted for fifty percent of his permanent total disability, a preexisting occupational disease of carpal tunnel syndrome, which accounted for twenty percent of his disability, and a subsequent industrial injury to his shoulder, which accounted for the remaining thirty percent of the permanent total disability. The court of appeals in *Grant* affirmed the order of the Industrial Claim Appeals Panel, which allocated responsibility for seventy percent of the permanent and total disability to the Subsequent Injury Fund. The imposition of liability on the Subsequent Injury Fund for that portion of the permanent total disability attributable to the occupational disease (i.e., twenty percent) is obviously inconsistent with our holding in this case.