**SUBSEQUENT INJURY FUND, Petitioner,**

v.

**Daryl GRANT, Associated Grocers of Colorado, Colorado Compensation Insurance Authority, and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 89CA1428.

Colorado Court of Appeals, Div. 1.

Sept. 13, 1990.

Rehearing Denied Oct. 25, 1990.

Certiorari Granted June 24, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for petitioner.

Fogel, Keating and Wagner, P.C., Marshall A. Fogel, David Struthers, Denver, for respondent Daryl Grant.

Paul Tochtrop, Denver, for respondents Associated Grocers of Colorado and Colorado Compensation Ins. Authority.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carol Mullins, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Opinion by Judge PIERCE.

The Subsequent Injury Fund (SIF) seeks review of a final order of the Industrial Claim Appeals Office (Panel) which ordered it to pay 70% of the permanent total disability benefits payable to claimant, Daryl Grant. We affirm.

Claimant was rendered permanently and totally disabled from the combined effect of a prior back injury, preexisting industrial carpal tunnel syndrome, and a subse-quent industrial injury to his shoulder. The Panel determined that 50% of claimant's disability was attributable to the prior back injury, 20% was attributable to the preexisting carpal tunnel syndrome, and the remaining 30% was due to the shoulder injury. Therefore, it assessed liability for 70% of claimant's total disability to the SIF.

I.

██ SIF contends that the testimony of claimant's orthopedic physician establishes that claimant's total permanent disability was caused in part by claimant's preexisting obesity and osteophytosis and that the Panel, therefore, erred in holding it liable for a portion of claimant's permanent disability benefits. We disagree.

██ Expert medical testimony is not conclusive on questions of causation or degree of disability. *See Savio House v. Dennis,* 665 P.2d 141 (Colo.App.1983); *Casa Bonita Restaurant v. Industrial Commission,* 624 P.2d 1340 (Colo.App. 1981). Furthermore, an industrial aggravation of a dormant preexisting condition or weakness can be the basis of a permanent partial disability award. *See Seifried v. Industrial Commission,* 736 P.2d 1262 (Colo.App.1986).

In this case, there was no evidence that claimant's obesity and osteophytosis were independently disabling. Furthermore, the testimony of claimant's physician concerning the contribution of these nonindustrial conditions to claimant's total disability was equivocal and subject to conflicting inferences. Also, we agree with the Panel that claimant's testimony concerning the nature and extent of his December 1980 back injury supports an inference that his back-related disability is solely the result of his work injury, and not other nonindustrial factors. Thus, there is substantial evidence to support the Panel's determination that claimant's nonindustrial conditions were not independently disabling, and that determination is binding upon review. *Gelco Courier v. Industrial Commission,* 702 P.2d 295 (Colo.App.1985).

## II.

■ SIF next contends that it cannot be held liable for any portion of claimant's permanent total disability because one of claimant's prior disabilities, carpal tunnel syndrome, is an occupational disease. SIF takes the position that its liability for prior injuries attributable to occupational diseases is governed exclusively by the specific provisions of § 8–51–112(2), C.R.S. (1986 Repl.Vol. 3B), rather than by the general provisions of § 8–51–106(1)(a), C.R.S. (1986 Repl.Vol. 3B). We disagree.

■ When an asserted conflict exists between two statutory sections, a court must attempt to harmonize the statutes and give effect to the legislative purposes underlying both sections. *Ragsdale Bros. Roofing, Inc. v. United Bank,* 744 P.2d 750 (Colo.App.1987). Moreover, the maxim that a specific statute prevails over a general statute has no application where the two statutory sections serve different purposes, and where it is possible to give effect to both statutes. *See Moran v. Carlstrom,* 775 P.2d 1176 (Colo.1989).

Under the facts of this case, there is no conflict in the purpose or effect of § 8–51–106(1)(a) and § 8–51–112(1), C.R.S. (1986 Repl.Vol. 3B).

Section 8–51–106(1)(a) requires SIF contribution in all cases in which an employee is rendered totally and permanently disabled by the combined effect of two or more permanent partial disabilities. The statute was enacted to provide an incentive for employers to hire partially disabled workers by relieving those employers of full liability for total permanent disability which might result from a subsequent injury. *See Subsequent Injury Fund v. Thompson,* 793 P.2d 576 (Colo.1990).

Section 8–51–112, in contrast, establishes the "last injurious exposure" rule for disabilities attributable to occupational diseases. Under this rule, if liability is disputed between more than one employer or insurer, § 8–51–112(1) assesses liability upon the employer "in whose employment the employee was last injuriously exposed to the hazards *of such disease.*" (emphasis added) *See Royal Globe Insurance Co. v. Collins,* 723 P.2d 731 (Colo.1986).

An exception to the rule limits the liability of the last employer and imposes liability in excess of $10,000 on the Subsequent Injury Fund for certain specified diseases, such as silicosis and radiation-related illnesses, which generally develop only after years of repeated and prolonged exposure. *See* § 8–51–112(2); *Subsequent Injury Fund v. State Compensation Insurance Authority,* 793 P.2d 580 (Colo.1990).

In view of the foregoing, it is evident that the two statutes serve different purposes. Section 8–51–112 assesses liability between successive employers, or between the employer and SIF under subsection (2), in cases involving *multiple exposures* to the *same* occupational disease. Section 8–51–106(1)(a), on the other hand, apportions liability between employers and the Subsequent Injury Fund in cases in which *multiple disabilities* have combined to render an employee totally and permanently disabled.

The Subsequent Injury Fund would have us limit § 8–51–106(1)(a) to cases involving accidental work injuries. However, this construction would require us to hold that the SIF has no liability for permanent partial disabilities which are attributable to any occupational disease not enumerated under § 8–51–112(2). This we cannot do.

■ A statutory construction that defeats legislative intent or leads to an absurd result will not be followed. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985); *Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973).

SIF's proposed construction would severely limit the protection provided by the SIF by excluding from coverage most cases in which an employee is totally and permanently disabled by the combined effect of two or more occupational diseases, or by an occupational disease and an accidental injury. And, this result would, in turn, circumvent the legislative intent of providing employment opportunities for partially disabled workers by relieving subsequent employers of full liability for total permanent disability. *See Subsequent Injury Fund v. Thompson,* 793 P.2d 576 (Colo.1990).

Furthermore, there is nothing in the language of § 8–51–106(1)(a) to support the limitation urged by SIF. The statute requires SIF contribution in all cases in which an "employee has previously sustained permanent partial *industrial disability* and in a subsequent *injury* sustains additional permanent partial *industrial disability* ... [which] render the employee permanently and totally incapable of steady gainful employment." The words "accident," "injury," and "injuries" are statutorily defined to mean a "disability or death resulting from accident *or occupational disease.*" (emphasis added) *See* § 8–41–108(2), C.R.S. (1986 Repl.Vol. 3B). In view of the statutory definition, and in the absence of an express limitation in § 8–51–106(1)(a) itself, we construe the statute to include disabilities which are attributable to occupational diseases.

Finally, SIF's reliance on dicta in *Gardner Denver v. Hansen,* 650 P.2d 1319 (Colo.App.1982) for a contrary result is misplaced. *Hansen* is factually distinguishable because the worker in that case did not have a prior permanent industrial disability as required for application of § 8–51–106(1)(a). Moreover, although the worker experienced two distinct periods of occupational exposure, his consequent disability was solely attributable to a single occupational disease.

Here, in contrast, the claimant was totally and permanently disabled by the combined effect of three separate industrial disabilities, one of which was the occupational disease of carpal tunnel syndrome.

Under these facts, we hold that § 8–51–106(1)(a) and § 8–51–112(1) do not conflict and that it is possible to give effect to both statutes. Therefore, the Panel's order imposing liability upon the Subsequent Injury Fund is affirmed.

SMITH and DAVIDSON, JJ., concur.