## No. C-1450

**Union Carbide Corporation, Employer, and State Compensation Insurance Fund, Insurer v. The Industrial Commission of the State of Colorado and Juereta P. Smith, its Director, Climax Uranium Corporation, Employer, and Claimants in the Matter of the Death of Roy Benally**

(581 P.2d 734)

Decided July 3, 1978.

Nelson, Hoskin, Groves & Prinster, P.C., Gregg K. Kampf, William H. Nelson, for petitioner Union Carbide Corporation.

Robert S. Ferguson, for petitioner State Compensation Insurance Fund.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, John Kezer, Assistant, Human Resources Section, David Lavinder, Assistant, Human Resources Section, for respondents Industrial Commission of the State of Colorado and Juereta P. Smith, Director, Division of Labor.

Traylor, Palo, Cowan & Arnold, David J. McKinley, Charles J. Traylor, for respondent Climax Uranium Corporation.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Union Carbide Corp. v. Industrial Commission,* 40 Colo. App. 182, 573 P.2d 938. We affirm the judgment.

Roy Benally worked as a uranium miner from 1955 to 1970 and died of lung cancer resulting from exposure to radioactive materials. This dispute is between his last two employers over which of them should pay the initial $7,500 of occupational disease benefits awarded to his dependents.

Petitioner Union Carbide Corporation hired Benally on April 28, 1970, subject to the provision that he pass the pre-employment physical examination. Benally actually worked eight days before the results of the physical examination were known. Because the sputum test showed the onset of lung cancer, Benally was dismissed on May 5. During his eight days of employment, Benally worked forty-eight hours, twenty-six of those underground, and was exposed to 0.15 Working Level Months (WLMs) of radiation. This exposure was estimated to be less than one ten-thousandth of his total exposure to radiation during his mining career.

The referee held that Benally was "last injuriously exposed" to radioactive materials during the eight-day period that he worked for Union Carbide. Benally had previously worked for the respondent Climax Uranium Corporation for the four years before he went to work for Union Carbide. However, under the "last injurious exposure" rule in section 8-60-113(1), C.R.S. 1973,[1] Union Carbide and its insurer were found to be solely liable for the $7,500 in benefits. The Industrial Commission adopted this opinion and the court of appeals affirmed.

---

[1] Now section 8-51-112(1), C.R.S. 1973 (1976 Supp.).

## I.

The issue presented to this court is whether Roy Benally's eight-day exposure to radioactive materials at the Union Carbide mine is a "last injurious exposure" sufficient to hold Union Carbide and its insurer liable for the initial $7,500 in occupational disease benefits.

The pertinent section of the Occupational Disease Disablility Act provides that the employer in whose employment the employee was "last injuriously exposed" to the hazards of such disease is liable with its insurance carrier for occupational disease benefits. Section 8-60-113(1), C.R.S. 1973.[2] The Act defines "injurious exposure" as "* * * that concentration of toxic material which would, independently of any other cause including the previous physical condition of the claimant, produce or cause the disease for which claim is made." Section 8-60-102(8), C.R.S. 1973.[3] The Act specifies that the employee must have worked for the "last" employer at least sixty days in order to hold that employer liable for disability from silicosis, asbestosis, or anthracosis. However, *no* minimum employment time is designated for diseases caused by exposure to radioactive materials.

In the case of *Climax Uranium Co. v. Smith,* 33 Colo. App. 337, 522 P.2d 134, the court of appeals was called upon to decide what constituted a "last injurious exposure." Smith was a uranium miner who died from cancer caused by his exposure to radioactive materials. Even though Smith worked for his last employer only twenty days out of his sixteen-year career, the court held that this employer was liable for the occupational disease benefits. The court interpreted "injurious exposure" to be: "a concentration of toxic material which would be sufficient to cause the disease in the event of prolonged exposure to such concentration." The court considered the injurious nature of the radiation *concentration,* "regardless of the *length of the exposure* required actually to cause the disease." (Emphasis added.) It found that the concentration received by Smith in the twenty-day period was well in excess of the federal standard and, thus, harmful.

We approve the *Smith* test because it focuses on the harmful nature of the *concentration* of the radioactive exposure if continued indefinitely at that level. This interpretation is consistent with the statutory definition of "last injurious exposure," which renders immaterial to the finding of liability the *length of the period of employment* with that particular employer.[4]

---

[2] The Colorado Occupational Disease Disability Act was repealed effective September 1, 1975, by Colo. Sess. Laws 1975, ch. 71, sec. 62 at 311. Nonetheless, this section was left substantially intact and is now found as part of section 8-51-112, C.R.S. 1973 (1976 Supp.). The crucial "last injurious exposure" language has not been altered.

[3] This section was repealed with the rest of the Act and has not been reenacted.

[4] We disapprove the language in the court of appeals' opinion in the present case, referring to a concentration of toxic material which would "increase the probability" of lung cancer. The test in *Smith,* which is based on a concentration of toxic material "sufficient to cause" lung cancer, is a more appropriate interpretation of the statutory language.

The petitioner correctly points out that many occupational diseases, such as lung cancer caused by exposure to radiation, result from a cumulative exposure to harmful concentrations over a working career with many employers. At first glance, it seems to be contradictory to recognize that the actual length of exposure is crucial in contracting an occupational disease, but then to hold that it is immaterial in determining liability for the disease. Nonetheless, on closer analysis, this rule makes good sense.

■ In order to receive any occupational disease benefits, the employee must prove that he has contracted an occupational disease and that it was caused by his employment activities. If the employee has worked for many different employers, it may well be that no single exposure with any one employer was in fact sufficient, in itself, to cause the disease, even though all the exposures contributed to the final result. Under such circumstances, a test for liability based upon the employee's actual length of exposure with each employer could well deny the employee any recovery for the disease. In contrast, the "last injurious exposure" rule looks at the concentration of radiation received during the last employment to determine whether the employee was exposed to a harmful quantity.

■ In addition, the general assembly, in enacting the "last injurious exposure" rule, was certainly aware of the practical impossibility of requiring a disabled employee to ascertain the exact amount that each employer contributed in causing his disease. Thus, the employee is not required to pinpoint exactly which employer *most* injuriously exposed him to radiation, but rather he is allowed to recover from the "last" employer which injuriously exposed him. If the rule were otherwise, the employee would be burdened with the almost impossible task of apportioning liability among his several employers. *See Colorado Fuel & Iron Corp. v. Alitto,* 130 Colo. 130, 273 P.2d 725.

## II.

In the present case, Union Carbide contends that Roy Benally did not receive a "last injurious exposure" in its mine. It argues that the eight-day exposure of 0.15 Working Level Months (WLMs) of radiation — approximately one ten-thousandth of his total exposure to radiation while mining — was not harmful. Additionally, Union Carbide points out that this amount of radiation, when projected over a year, was within the 12 Working Level Months federal standard in effect at the time.

The foregoing analysis of the "last injurious exposure" rule has made clear that the *length* of the actual exposure, in this case eight days, is immaterial to the imposition of liability. Nonetheless, it must be determined

if a *concentration* of 0.15 WLMs of radiation during an eight-day period is an "injurious exposure." If it is not an injurious exposure, then Union Carbide cannot be held liable for occupational disease benefits.

A WLM is the equivalent of one person working eight hours a day for the normal number of work days in a month, and being continuously exposed during that work period at an average of "one work level" of radiation.[5] The federal government has adopted a standard which attempts to set the maximum radiation dosage in WLMs that a miner could safely receive in a year's time without running the risk of developing an occupational disease such as lung cancer. A standard of 12 WLMs was adopted in 1967, but was revised downward to 4 WLMs on July 1, 1971. At the time that the referee rendered his decision in this case, the federal standard was 4 WLMs.

The trier of fact must determine whether a certain concentration of radiation constitutes an "injurious exposure." The test from the *Smith* case, which we adopt, is whether the amount of radiation is "a concentration of toxic material which would be sufficient to cause the disease in the event of prolonged exposure to such concentration."[6] The federal standard, which attempts to set a level beyond which an exposure becomes injurious, is perhaps of the greatest value to the trier of fact. In addition, expert medical testimony may be helpful in deciding whether a given exposure was "injurious" to a certain person.

In the present case, the referee's decision that the exposure was "injurious" has ample support in the record. Although there is some confusion in the record, petitioners concede in their brief that, when projected over the period of one year, Benally's exposure to radiation at Union Carbide's mine was equivalent to at least 6.8 WLMs.[7] This concentration is seventy percent more than the exposure level permitted by the federal standard in effect at the time that the referee rendered his decision.[8]

---

[5] "One work level" is the standard unit measurement of radiation and is defined by one epidemiologist as "1.3 times 10 to the 5th of potential alpha energy per liter of air."

[6] There has been some dispute over the "sufficient to cause" wording of the *Smith* test. The problem is that the legal definition is at variance with the medical definition. The medical experts do not speak of concentrations which are "sufficient to cause" occupational diseases, but rather refer to concentrations which "increase the risk" of contracting a disease. Insignificant concentrations of radiation do not "increase the risk"; in this case, the epidemiologist testified that, in his opinion, only concentrations in excess of 4 WLMs were sufficient to increase the risk of contracting lung cancer. We do not find these differences in wording to be meaningful in this area of the law. We perceive no reason to get involved in "futile searches for unattainable factual certainties." *Mathis v. State Accident Insurance Fund,* 10 Ore. App. 139, 499 P.2d 1331.

[7] The expert witness at the hearing was of the opinion that Benally received approximately 10.6 WLMs of radiation when projected over a year. The parties subsequently adopted a figure of 9.6 WLMs in framing their questions to witnesses at the hearing.

[8] The pertinent federal standard is the standard in effect at the time of the referee's decision, not the standard in effect at the time that the employee received the exposure. The crucial issue is whether the exposure was "injurious" to the miner, not whether the mine was being operated within the then-applicable federal standards. The most up-to-date federal standard is undoubtedly of the greatest help to the referee in deciding whether an exposure was injurious.

In addition, the medical and epidemiological expert at trial gave the following testimony:

"Q. Would the exposure of .15 working-level months, accrued within a period of 24 hours of mining underground, and continued at that level for an indefinite period of time, cause a lung cancer?

"A. To answer this question directly, I would say yes. If this level of exposure were continued indefinitely, say for 20 or 30 years, that the man's risk of lung cancer would be increased."

This evidence clearly demonstrates that Benally received a "last injurious exposure" to radiation at the Union Carbide mine.

■ We have often recognized that: "[T]he Workmen's Compensation Act is to be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families." *Garner v. Vanadium Corp. of America,* 194 Colo. 358, 572 P.2d 1205. We note that the petitioner could have avoided this dispute by waiting for the results of the pre-employment physical examination before putting Benally to work. Additionally, we observe that the last employer which injuriously exposes an employee to toxic materials is liable only for the initial $7,500 of occupational disease benefits. Any additional benefits are paid out of the subsequent injury fund to which all employers contribute. *See* section 8-60-113(2), C.R.S. 1973.

### III.

■ Union Carbide also contends that the application of the "last injurious exposure" rule to it in these circumstances violates its due process and equal protection rights. We find both contentions unpersuasive.

First, the petitioner argues that holding it liable for the $7,500 in benefits is an arbitrary and unreasonable taking of its property. We have interpreted the "last injurious exposure" rule to require the presence of a harmful exposure to toxic material by that employer. A harmful exposure, even of only an eight-day duration, is not an arbitrary basis upon which to impose liability up to $7,500. Rather, it is a reasonable method for providing initial limited compensation to an employee and his family.

Second, the petitioner argues that the imposition of liability on the last employer, while absolving all previous employers from liability, violates equal protection. Since this difference in treatment is not based upon suspect classifications or fundamental interests, the issue is whether the difference in treatment bears a rational relationship to legitimate state objectives. *Mosgrove v. Town of Federal Heights,* 190 Colo. 1, 543 P.2d 715. It is indisputably proper for the state to protect the public health and safety by enacting legislation which compensates workers and their

families for injuries received during employment. *School Dictrict No. 1 v. Industrial Commission,* 66 Colo. 580, 185 P. 348. The distinction in the Act between a last employer and previous employers bears a rational relationship to the legislative objective because it provides a clear and reasonable method for an employee and his family to recover initial benefits from at least one employer who has injuriously exposed him to toxic materials. As the United States Supreme Court commented in approving the Federal Coal Mine Health and Safety Act: "It is enough to say that the Act approaches the problem of cost spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752.

The judgment is affirmed.

MR. JUSTICE HODGES and MR. JUSTICE GROVES do not participate.