**ROYAL GLOBE INSURANCE COMPANY, Petitioner,**

v.

**Josie R. COLLINS, Claimant, Potomac Insurance Company, Redfield Scope Company and the Industrial Commission of the State of Colorado, Respondents.**

**No. 84SC191.**

Supreme Court of Colorado,
En Banc.

July 7, 1986.

Rehearings Denied Aug. 25, 1986.

Glasman, Jaynes & Carpenter, Ronald C. Jaynes, Susan D. Steninger Knisley, Denver, for petitioner.

Douglas R. Phillips, Denver, for claimant.

Halaby & McCrea, Bruce B. McCrea, Denver, for respondent Potomac Ins. Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst.

Atty. Gen., Denver, for respondent Industrial Com'n.

KIRSHBAUM, Justice.

We granted certiorari to review the opinion of the Court of Appeals in *Redfield Scope Co. v. Industrial Commission*, 689 P.2d 657 (Colo.App.1984). We affirm in part and reverse in part.

Josie Collins (claimant) worked as an assembler of rifle telescopes for Redfield Scope Company (Redfield) for some five years prior to February 1978. The job required repetitive twisting and turning motions of her right hand and arm and, simultaneously, the exertion of pressure during the twisting motion. After experiencing soreness in her right arm and shoulder, she sought medical attention on June 14, 1977. Her condition was diagnosed as bicipital tendonitis caused by her assembly line work.[1]

Despite her attending doctor's recommendation that she discontinue her job, the claimant continued to work until July 21, 1977. She then left work because of pain, but returned on August 2, 1977, and worked until August 11, 1977. The claimant again stopped working because of pain and did not return to work until November 1977. At that time, the claimant was given various work assignments that did not result in great pain. However, on February 16, 1978, Redfield asked the claimant to resume her prior job of rifle telescope assembler. She refused on the basis that full time work of that kind would result in pain. Redfield then terminated her employment and placed her on medical leave.

On October 25, 1978, the claimant filed a claim for workers' compensation benefits against Redfield and Potomac Insurance Company (Potomac), Redfield's workers' compensation insurance carrier during 1977. On January 1, 1978, Royal Globe Insurance Company (Royal Globe) replaced Potomac as Redfield's workers' compensation insurance carrier. The claim was con-

tested and a hearing was held on April 16, 1979. Following this hearing, Potomac filed a motion to substitute Royal Globe as the responsible insurer. A hearing on that question was held on October 22, 1979, and the hearing officer issued his order on August 5, 1982.

The hearing officer concluded that the claimant was entitled to workers' compensation benefits and that Potomac was the responsible insurer because the claimant became disabled during Potomac's period of coverage. The hearing officer further concluded that the claimant's "injurious exposure" after January 1, 1978, would have made Royal Globe liable only if the evidence had established that the "injurious exposure" had increased the claimant's disability.

Potomac petitioned for review, and the Industrial Commission (the Commission) reversed the referee's conclusion that Potomac was the responsible insurer. Relying on this court's decision in *Union Carbide Corp. v. Industrial Commission*, 196 Colo. 56, 581 P.2d 734 (1978), the Commission held that the claimant was "last injuriously exposed" in her final seven weeks of employment in 1978, at which time Royal Globe was Redfield's insurance carrier. On appeal, the Court of Appeals affirmed the Commission's final order.

I

■ We must initially determine when the claimant was last injuriously exposed to the hazards of her occupational disease. Royal Globe argues that the claimant was not exposed to the hazards of bicipital tendonitis after her return to work in November 1977. Potomac and the Commission assert that she was so exposed during her final weeks of employment. We agree with Potomac and the Commission.

Section 8–51–112(1), 3 C.R.S. (1985 Supp.), provides in pertinent part:

Where compensation is payable for an occupational disease, the employer in

---

1. The claimant testified that her arm did not become sore until the company increased its production quota from 140 scope assemblies per day to 203.

whose employment the employee was *last injuriously exposed* to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier.

(emphasis added).

When responsibility for compensation to an employee who contracts an occupational disease is disputed because more than one employer or insurer is involved, the statute requires the Commission to determine which of the potentially liable parties must pay all of the compensation to which the employee is entitled. Determination of when an employee was last injuriously exposed to the hazards of an occupational disease requires development of a legal standard sufficiently flexible to accommodate a vast array of occupational diseases that may arise in extremely divergent factual patterns.

In *Union Carbide*, 196 Colo. 56, 581 P.2d 734, we considered the claim of an employee who contracted an occupational disease as the result of exposure to toxic materials. We described the test to determine that claimant's last injurious exposure as "whether the amount of radiation is 'a concentration of toxic material which would be sufficient to cause the disease in the event of prolonged exposure to such concentration.'" *Id.* at 61, 581 P.2d at 737 (quoting *Climax Uranium Co. v. Smith*, 33 Colo. App. 337, 342, 522 P.2d 134, 136 (1974)).

*Union Carbide* concerned the question of whether the last employer of a uranium miner who throughout his fifteen-year mining career had been exposed to varying levels of radioactive particulates was liable for workers' compensation benefits where the miner worked for that employer for only eight days prior to the discovery that he had an occupational disease. Because the level of radiation to which the worker was exposed during his last eight days of employment exceeded the level permitted by applicable federal standards, we concluded that exposure to that elevated level of radiation over a prolonged period of time would be sufficient to cause lung cancer, the disease with which the employee was afflicted. We then concluded that the claimant was last injuriously exposed to the hazards of lung cancer in those final eight days of employment.

The rule of *Union Carbide* is especially appropriate to resolve the special issues present in particulate exposure cases [2] where the development of the disease is insidious; the disease is attributable to exposure to particles over a long period of time, in all likelihood involving employment by many employers; and the effort to fix a precise period of employment during which the employee was not exposed to causes of the disease would be fraught with difficulties. The claimant here suffered from an occupational disease that manifested itself in a relatively short period of time and which was undeniably attributable to her job duties with a single employer. Nevertheless, the disease itself, just as the disease in *Union Carbide*, is the result of a work environment in which the claimant was required to perform certain functions.

The cause of the occupational disease in *Union Carbide* was the exposure of the claimant to certain amounts of toxic substances in the work environment. The claimant's bicipital tendonitis in this case resulted from a work environment requiring certain kinds and amounts of physical activity. The two diseases are different, of course, and sources of evidence to establish permissible or impermissible levels of particulate concentration differ markedly from sources of evidence to establish the nature

---

**2.** The last part of § 8–51–112(1) addresses other environmentally caused occupational diseases and requires a minimum employment period:

In the case of silicosis, asbestosis, or anthracosis, the only employer and insurance carrier liable shall be the last employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide (Si02) dust, asbestos dust, or coal dust on each of at least sixty days or more and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer.

and degree of particular physical activities. However, there is no sound reason to suggest that a special test of last injurious exposure is required for non-particulate cases. The applicability of section 8–51–112(1) should not depend upon the particular nature of an employee's occupational disease.

The approach approved in *Union Carbide* appears quite suitable for application to the claimant's bicipital tendonitis claim here. Whether her last injurious exposure occurred during the period subsequent to her return to work in November 1977 depends on whether during that time the requirements of her job established a work environment that would be sufficient to cause the disease in the event of continued work in such environment. The evidence adduced at the hearing establishes that the claimant's occupational disease was caused by a combination of certain physical movement of her right arm and shoulder and the simultaneous application of pressure by that arm. The claimant testified on direct and cross-examination that from August 1977 through February 1978 she was required by various job assignments, including some first assembly work, to use her right arm in a twisting manner while exerting pressure—a use which was the same or similar to the way she used her arm while working solely as a telescope assembler. The evidence is sufficient to support the conclusion that for purposes of section 8–51–112(1) the claimant's last injurious exposure to the hazards of tendonitis occurred during January and February of 1978, when she performed physical activities similar to those she was required to perform during 1977.

Royal Globe argues that section 8–51–112(1) does not apply to injurious exposure to physical work requirements imposed after the disability has been established, unless such exposure is found to have contributed to the previously contracted disease. Some jurisdictions have developed a "contribution" test for application of a last injurious exposure standard to diseases caused by physical activities. *See, e.g., Scott Co. v. Workers' Compensation Appeal Board,* 139 Cal.App.3d 98, 188 Cal.Rptr. 537 (1983); *Thermos Co. v. Industrial Commission,* 83 Ill.2d 54, 46 Ill.Dec. 133, 413 N.E.2d 1246 (1980); *Busse v. Quality Insulation Co.,* 322 N.W.2d 206 (Minn.1982); *Halverson v. Larrivy Plumbing & Heating Co.,* 322 N.W.2d 203 (Minn.1982); *Rutledge v. Tultex Corp./Kings Yarn,* 308 N.C. 85, 301 S.E.2d 359 (1983); *Boise Cascade Corp. v. Starbuck,* 296 Or. 238, 675 P.2d 1044 (1984); *Bracke v. Baza'r, Inc.,* 293 Or. 239, 646 P.2d 1330 (1982); *Maraney v. Workmens' Compensation Appeal Board,* 66 Pa.Cmwlth. 83, 445 A.2d 559 (1982); *Morell v. ASARCO, Inc.,* 611 S.W.2d 830 (Tenn.1981). However, section 8–51–112(1) by its terms applies to all occupational diseases. It articulates the decision of the General Assembly to place the entire responsibility for paying compensation benefits to an eligible employee upon a single employer and a single insurer, with no right of contribution from other employers or insurers. As demonstrated above, the principle adopted in *Union Carbide* is sufficiently flexible to permit its application to physical injury as well as to particulate exposure decisions. Because the evidence supports the Commission's conclusion that the physical requirements of the claimant's job duties with Redfield after January 1, 1978, were the same or similar to the physical requirements of her job duties as a telescope assembler in 1977, the Court of Appeals was correct in affirming that conclusion.

II

Royal Globe also argues that the Commission's finding that the claimant was injuriously exposed to bicipital tendonitis after January 1, 1978, was not supported by the evidence and that the Commission exceeded its statutory review power by concluding that the hearing officer's findings as to injurious exposure were contrary to the weight of evidence. We disagree.

 In its order, the Commission stated:

The referee erred in dismissing Respondent Royal Globe and in imposing liability upon Potomac. The seven weeks of last injurious exposure to claimant from January 1st to February 16, 1978 constituted the last injurious exposure. The referee went contrary to the weight of evidence, and erred as a matter of law, in the interpretation and ruling described. Even though it was not apparent to the referee from the medical evidence that claimant's disability had worsened in that final exposure, such would not warrant elimination of the final seven weeks as the last injurious exposure expressly contemplated by the statute.

Section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.),[3] provides the appropriate standard of review for the Commission:

> The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the director or referee shall not be set aside by the commission on review of the director's or referee's decision unless the findings of evidentiary fact are contrary to the weight of the evidence.

Findings of ultimate fact are, however, for the Commission's *de novo* determination. A finding that a claimant was last injuriously exposed assigns liability to a party and is, therefore, a finding of ultimate fact. *See Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982). Thus, the Commission had the authority to reverse the hearing officer's finding on whether the claimant had been injuriously exposed after January 1, 1978. The Commission entered the following findings in support of its conclusion that the claimant was injuriously exposed to the hazards of tendonitis after January 1, 1978:

> The final seven weeks of claimant's performance in employment in this case is a sufficient length of time for injurious exposure to have occurred as a proxi-

mate cause of claimant's disability from occupational disease, *since she was performing much of the same employment as constituted the exposure which caused the disease to manifest itself in 1977.*

(emphasis added). Royal Globe contends that the emphasized portion of the foregoing findings constitutes a finding of evidentiary fact based on the raw evidentiary data presented at the hearing, and that a contrary finding by the hearing officer is, therefore, binding on the Commission. *See Baca v. Helm,* 682 P.2d 474 (Colo.1984). The hearing officer's finding on this issue is contained in the following portions of his ruling:

> [The claimant] did some lighter work as a first cleaner, but also used her arm part of the time in a manner similar to that required by her former job as a first assembler. The evidence does not show any essential change in [the claimant's] condition as a result of her last period of employment, however, and her being placed upon medical leave was occasioned by her refusal to attempt to do those parts of the work which placed stress upon her right arm.

While these findings are not precise, they do establish that after January 1, 1978, the claimant was required to use her arm in a manner similar to that required of her when she worked only as an assembler of rifle telescopes. On both direct and cross-examination, the claimant testified that between November of 1977 and February of 1978 she performed several jobs, including the job of assembler. In this posture, we do not deem the evidentiary facts found by the hearing officer to be contrary to those stated by the Commission, and we conclude that the Commission's findings are supported by the record.

---

**3.** In 1983 and 1984, the General Assembly substantially revised and reorganized the Workmen's Compensation Act. The standard of review for the Commission is now codified at § 8–53–111(7), 3 C.R.S. (1985 Supp.). That section provides in pertinent part:

> If the findings of evidentiary fact entered by the director or hearing officer are supported by substantial evidence, they shall not be altered by the Commission.

736

## III

In assigning liability to Royal Globe under the last injurious exposure rule of section 8–51–112(1), the Commission dismissed Potomac from liability and held Royal Globe solely liable for the claimant's compensation and medical benefits. However, the claimant became entitled to compensation as a result of absences from work and medical expenses during periods of time while Potomac was on the risk. Royal Globe argues that the last injurious exposure rule cannot be used to impose liability on a subsequent insurer for compensation and medical benefits incurred prior to that insurer's assumption of the risk.

 Section 8–51–112(1) states that the insurance carrier at the time of the last injurious exposure "shall alone be liable" for compensation payable for an occupational disease. At several points in the Workmen's Compensation Act, §§ 8–41–101 to 8–54–127, 3 C.R.S. (1973 & 1985 Supp.) (the Act), the General Assembly has distinguished the benefits payable for medical expenses from those payable for decreased ability of claimants to work, whether as a result of temporary or permanent disability. For example, section 8–51–113 prohibits "waiver of compensation or medical benefits," section 8–49–101(1)(b) expressly requires employers to insure their "liability for the medical, surgical, and hospital expenses provided for in this article," while section 8–44–101 requires employers to secure compensation for their employees from one of several sources. Similarly, the general compensation provisions as to temporary and permanent disability are contained in article 51 and the medical expense provisions are set forth in Article 49 of Title 8 of the Act. *See State Compensation Insurance Fund v. Velasquez*, 628 P.2d 190 (Colo.App.1981). Given the General Assembly's differing treatment of compensation benefits and medical benefits, we conclude that the last injurious exposure rule of section 8–51–112(1) applies only to compensation benefits; the insurance carrier on the risk at the time medical expenses are incurred is liable for payment of those expenses.

In light of the plain language of section 8–51–112(1), payment of temporary disability benefits is, however, governed by the last injurious exposure rule. Accordingly, Potomac is liable for those medical expenses of the claimant actually incurred prior to January 1, 1978, and Royal Globe is liable for payment of all medical expenses incurred thereafter and all compensation amounts awarded to the claimant in connection with her bicipital tendonitis.

The judgment of the Court of Appeals is affirmed in part and reversed in part.