The DOW CHEMICAL COMPANY, Rockwell International Corporation, and The Travelers Insurance Company, Petitioners,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, The Subsequent Injury Fund, James R. Downing (deceased), Carol Downing, Michael Downing, and Mary Kathleen Downing, Respondents.

No. 91CA1248.

Colorado Court of Appeals, Div. V.

Aug. 27, 1992.*

Rehearing Denied Aug. 27, 1992.

Certiorari Denied Jan. 19, 1993.

* Opinion previously announced as non-published July 23, 1992 is now selected for publication.

Martinez & Associates, Larry R. Martinez, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., David C. Feola, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent Subsequent Injury Fund.

Silver & DeBoskey, P.C., Bruce H. DeBoskey, Steven W. Kelly, Douglas R. Phillips, P.C., Douglas R. Phillips, Denver, for respondents James R. Downing (deceased), Carol Downing, Michael Downing and Mary Kathleen Downing.

Opinion by Judge NEY.

Petitioners, Dow Chemical Company and Travelers Insurance Co. (Rocky Flats), contest an order of the Industrial Claim Appeals Panel, awarding death benefits to the beneficiaries of the decedent, James R. Downing. We affirm.

The decedent worked 17 years at the Rocky Flats Nuclear Weapons Plant and died at the age of 44 from a rare cancer of the esophagus known as adenocarcinoma. The decedent had a long history of gastric difficulties and Barrett's esophagus, a condition characterized by a reflux of stomach acid into the lower esophagus. Expert witnesses for both sides agreed that Barrett's esophagus is a "precancerous" condition which makes the affected cells more susceptible to developing cancer.

The expert witnesses for Rocky Flats maintained that decedent's cancer was a natural result of the Barrett's esophagus and that decedent's occupational exposure to radiation at Rocky Flats played no causative role in the onset of his cancer. One expert even asserted that decedent's exposure to radiation at Rocky Flats was no more injurious than if he had "worked at Dairy Queen." However, another of the Rocky Flats' experts acknowledged that radiation could act upon a Barrett's esophagus to cause it to become cancerous.

There was evidence that esophageal cancers have occurred in above-average percentages in population groups exposed to large doses of radiation, including Japanese atomic bomb survivors. Further, there was undisputed evidence that only 10 to 20 percent of people afflicted by Barrett's esophagus ultimately develop adenocarcinoma.

Dr. Edward P. Radford, the expert witness called by the decedent's beneficiaries, opined that although the Barrett's esophagus predisposed the decedent to cancer, the fatal adenocarcinoma was precipitated by the decedent's occupational exposure to external radiation, together with his inhalation and ingestion of alpha-emitting radioelements including plutonium, americium, tritium, and uranium, while employed at Rocky Flats. Other medical and scientific experts submitted written opinions arriving at conclusions substantially similar to Dr. Radford's.

The decedent's radiation exposure records reflect that he was involved in some 48 radiation "accidents" at Rocky Flats and that he was repeatedly exposed to both external and internal radiation during his 17 years of employment. An autopsy performed on the decedent by Rocky Flats and the United States Transuranium Registry (U.S.T.R.) found measurable quantities of both plutonium and americium in the decedent's adrenals, kidneys, liver, lungs, lymph nodes, ribs, spleen, sternum, testes, and vertebrae, and further found measurable quantities of uranium in his lymph nodes, adrenals, ribs, testes, and spleen. Each of these substances emit alpha radia-

tion. One physician concluded that decedent's lungs contained 398.5 times more plutonium than would be found in the lungs of non-occupationally exposed residents of Colorado.

Inexplicably, however, and contrary to Rocky Flats' standard procedure of evaluating the site of malignant tumors in the autopsy of its workers, neither the decedent's esophagus nor the adjoining stomach were tested for the presence of internal deposits of radionuclides, i.e., radioactive atoms.

The Administrative Law Judge (ALJ) made extensive findings of fact and determined, inter alia, that Dr. Radford was more credible than the expert witnesses presented by Rocky Flats on the critical areas in controversy. The ALJ concluded that decedent's fatal cancer was proximately caused by occupational exposure to external and internal radiation while employed at Rocky Flats and awarded appropriate benefits, including medical and funeral expenses, and dependency benefits. The Panel affirmed the award.

I.

█ The petitioners contend that Dr. Radford's testimony was conjectural and incompetent as a matter of law because it relied upon facts and assumptions which had no evidentiary basis. We disagree.

The testimony to which Rocky Flats objects was Dr. Radford's calculation of the estimated radiation exposure to the decedent's esophagus. Dr. Radford acknowledged that because the decedent's esophagus was not clinically tested during autopsy, the actual radiation exposure to the esophagus can never be definitively established. However, relying on Rocky Flats' records of decedent's occupational radiation exposure, showing 8.13 rems of external penetrating radiation, and a systemic, or internal, burden of 2.4% of the maximum permissible internal deposits of plutonium, and the amount of radionuclides measured in other tissues, Dr. Radford calculated that decedent's esophagus received a total dose of 213 rems of radiation.

Rocky Flats attempted to repudiate its own radiation exposure records through testimony that tissue tests performed at decedent's autopsy revealed that decedent's occupational exposure records had been "overestimated" by a factor of ten. Based on this testimony, Rocky Flats argues that Dr. Radford's reliance on the decedent's occupational exposure records was erroneous and misleading. We do not agree.

The former Manager of Radiation Safety at Rocky Flats conceded that, had the decedent's esophagus and stomach been properly tested during autopsy, they would have been found to contain radionuclides in concentrations similar to that found in other organs. Additionally, he testified that existing methods of measuring *both* external and internal radiation exposure are imprecise and may be inaccurate by as much as fifty percent in either direction. He further acknowledged that the decedent was not tested annually for radiation exposure and that decedent's radiation exposure records were "incomplete."

Further, Dr. Radford disputed Rocky Flats' contention that its records *overestimated* decedent's systemic radiation burden; to the contrary, Dr. Radford opined that the Rocky Flats' records *underestimated* decedent's occupational exposure since the records prior to 1970 contained no measurement for uranium and americium Dr. Radford further testified that the systemic (internal radiation) burden at death accounted for only a "small fraction" of the internal radiation ingested, inhaled, or absorbed through the decedent's skin during his employment at Rocky Flats. The reliability of the Rocky Flats' exposure records were also questioned in the written reports of other medical and scientific experts.

■ An expert witness may express an opinion based upon assumptions which have a reasonable basis in the evidence. *Koehn v. R.D. Werner Co.*, 809 P.2d 1045 (Colo.App.1990). And, the trier of fact is vested with broad discretion in determining whether the evidentiary requirements governing expert opinions have been satisfied. *Gold Rush Investments, Inc. v. G.E. John-son Construction Co.*, 807 P.2d 1169 (Colo. App.1990), (*cert. dismissed per stipulation*, August 12, 1991). Factual findings based upon conflicting evidence are conclusive on review. *Dow Chemical Co. v. Gabel*, 746 P.2d 1357 (Colo.App.1987).

Here, after thoroughly reviewing the record, we are satisfied that there was a reasonable basis in the evidence for the assumptions made by Dr. Radford. We concur with the Panel that the record presented, at most, a factual controversy regarding the accuracy of Rocky Flats' radiation monitoring records and measurement techniques, and the weight to be accorded to the conflicting evidence of causation rendered by each side's scientific and medical experts. *See Rockwell International v. Turnbull*, 802 P.2d 1182 (Colo.App.1990).

Further, contrary to the petitioners' characterization of the record, there is support in the record for the ALJ's implicit determination that Dr. Radford employed generally accepted scientific principles and calculations in estimating the radiation exposure to the decedent's esophagus.

## II.

■ Next, we reject petitioners' contention that the ALJ should have excluded Dr. Radford's calculation on grounds that it constituted "surprise" evidence and "trial by ambush."

The calculation to which the petitioners object merely sets forth, in mathematical formula, the rationale underlying Dr. Radford's opinion that the decedent's cancer was precipitated by occupational radiation exposure. Since the petitioners were fully aware of Dr. Radford's opinion and underlying rationale prior to the administrative hearing, we perceive no abuse of discretion in the ALJ's decision to admit the calculation. We agree with the Panel that petitioners had adequate opportunity both to cross-examine Dr. Radford and to present contradictory evidence, and that no prejudicial error has been shown. *See* CRE 103(a); *IPMC Transportation Co. v. Industrial Claim Appeals Office*, 753 P.2d 803 (Colo.App.1988).

### III.

 Petitioners next argue that the Subsequent Injury Fund (SIF) is liable for compensation in excess of $10,000 under § 8-41-304(2), C.R.S. (1991 Cum.Supp.) because decedent worked for more than one employer. Their argument is premised on the fact Dow Chemical Co. was replaced by Rockwell International Corporation as manager of Rocky Flats in 1975, one year prior to the diagnosis of the decedent's fatal cancer. We reject their argument.

The evidence established that the latency period for the decedent's cancer was 5 to 10 years and that the cancer therefore had been in existence—though it was clinically undetected—for 5 to 10 years prior to its diagnosis in 1976. Expert witnesses for both sides agreed that exposure subsequent to the onset of decedent's cancer could have no causative effect.

The causation evidence presented by the beneficiaries was based entirely on decedent's occupational exposure *prior* to 1971 and did not take into account radiation exposure sustained by the decedent *after* July 1, 1975, when Rockwell assumed management of Rocky Flats. Further, the Subsequent Injury Fund presented the only expert relative to exposure after July 1, 1975, who opined that the amount of radiation exposure sustained by decedent *after* July 1, 1975, was not sufficient to have any injurious effect *even assuming*, hypothetically, that such exposure would have continued for an *additional 40 years.*

Based on the foregoing evidence, the ALJ and Panel determined that decedent's total radiation exposure subsequent to July 1, 1975, was insufficient to constitute an "injurious exposure" as that term has been defined.

We agree that the terms for SIF liability under § 8-41-304(2) were not established under the facts of this case. *See Union Carbide Corp. v. Industrial Commission,* 196 Colo. 56, 581 P.2d 734 (1978).

### IV.

 Finally, petitioners contend the Panel should have apportioned liability for the occupational and non-occupational components of decedent's cancer. We disagree.

 In the absence of a non-occupational condition that is independently disabling, the workers' compensation law does not distinguish between industrial disabilities that are caused by employment-related aggravation of pre-existing conditions and those that are not. *See Subsequent Injury Fund v. Thompson,* 793 P.2d 576 (Colo. 1990).

Here, there was no evidence that decedent's pre-existing non-occupational Barrett esophagus was independently disabling. Therefore, this case falls under established law allowing compensation in cases in which industrial hazards or toxins have acted upon a worker's pre-existing, non-occupational condition to cause death or disability. *See Subsequent Injury Fund v. Thompson, supra.*

We have examined the petitioners' remaining contentions and find them to be without merit.

Order affirmed.

STERNBERG, C.J., and DAVIDSON, J., concur.