**MONFORT, INC., Petitioner,**

v.

**Victor L. RANGEL and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 92CE0006.

Colorado Court of Appeals,
Div. I.

Aug. 26, 1993.

Rehearing Denied Sept. 30, 1993.

Certiorari Denied Jan. 24, 1994.

Hall & Evans, Cindy Slevin, Denver, for petitioner.

Ozer & Mullen, P.C., M. Scott Ash, Denver, for respondent Victor L. Rangel.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John D. Baird, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Opinion by Judge PIERCE.

On petition of the self-insured employer, Monfort, Inc. (Monfort), in this workers' compensation case, we granted certiorari to determine whether the correct standard or definition of "substantial permanent aggravation" under § 8–41–304(1), C.R.S. (1992 Cum. Supp.) was applied in awarding the claimant temporary disability and medical benefits. We conclude that the proper standard was applied, and therefore, we affirm the order of the Industrial Claim Appeals Office.

Victor L. Rangel, claimant, was employed by Monfort for a period of a few weeks in July and August 1991. The Administrative Law Judge (ALJ) found that the claimant had sustained a "substantial permanent aggravation" of his pre-existing carpal tunnel syndrome in this employment and, therefore, ordered Monfort to pay the applicable benefits.

Carpal tunnel syndrome is an occupational disease, see *Subsequent Injury Fund v. Grant,* 827 P.2d 574 (Colo.App.1991), and it is undisputed that the claimant's condition was aggravated to some extent by his employment with Monfort.

## I.

Monfort contends that by adding the requirement of "a substantial permanent aggravation" to the statute regarding liability for occupational diseases, the General Assembly intended to avoid the harsh effects of *Royal Globe Insurance Co. v. Collins,* 723 P.2d 731 (Colo.1986) and, in effect, to adopt the "significant contributing cause" test used

in other jurisdictions to allocate liability among successive employers. We are not persuaded.

A statute must be construed as a whole, giving effect to every part of it. Section 2–4–212, C.R.S. (1980 Repl.Vol. 1B); *Blue River Defense Committee v. Town of Silverthorne*, 33 Colo.App. 10, 516 P.2d 452 (1973). And, whenever possible, we must determine the meaning of a statute from the plain language used. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990).

Section 8–41–304(1) provides:

Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease *and suffered a substantial permanent aggravation thereof* and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier. (emphasis added)

The emphasized portion of § 8–41–304(1) was added effective July 1, 1991, for injuries occurring on or after that date. Colo.Sess. Laws 1991, ch. 219 at 1295, 1342.

The word "injury" is defined to include occupational diseases. *See Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo. 1991).

■ In *Union Carbide Corp. v. Industrial Commission*, 196 Colo. 56, 581 P.2d 734 (1978), our supreme court approved of our interpretation of the phrase "last injurious exposure" in *Climax Uranium Co. v. Smith*, 33 Colo.App. 337, 522 P.2d 134 (1974). There, in the context of a miner who had been exposed to radiation, we construed the phrase as meaning "a *concentration* of toxic material which would be sufficient to cause the disease in the event of prolonged exposure to such concentration." *Climax Uranium Co. v. Smith*, 33 Colo.App. at 342, 522 P.2d at 136 (emphasis in original). In approving our interpretation, the *Union Carbide* court concluded that such an interpretation was consistent with the statutory definition of "last injurious exposure" because it focused on the harmful nature of the *concentration* of exposure, rendering immaterial the *length* of the period of employment with a particular employer.

Thus, the "last injurious exposure" rule looks at the "concentration" of the hazard at the last employment to determine whether the employee was exposed to a harmful quantity. *Union Carbide Corp. v. Industrial Commission, supra.*

In *Union Carbide*, the cause of the claimant's occupational disease was exposure to toxic substances. However, this same test of "last injurious exposure" was later extended to occupational diseases in non-particulate cases when the work environment requires certain kinds and amounts of physical activity. *See Royal Globe Insurance Co. v. Collins, supra.*

In *Royal Globe*, our supreme court acknowledged that some jurisdictions have developed a "contribution" test for application of a last injurious exposure standard to diseases caused by physical activities. However, the court expressly rejected the contribution test because it concluded that our statute by its terms applies to all occupational diseases. It concluded that the "last injurious exposure" test articulates the decision of the General Assembly to place the entire responsibility for paying compensation benefits to an eligible employee upon a single employer and a single insurer, with no right of contribution from other employers or insurers. *Royal Globe Insurance Co. v. Collins, supra; see also Climax Molybdenum Co. v. Walter, supra.*

■ In our view, the addition of the phrase "substantial permanent aggravation" to § 8–41–304(1) did not eliminate or change the last injurious exposure test for causation as interpreted in *Union Carbide* and *Royal Globe*. Nor does it reflect an intent of the General Assembly to depart from the principles set forth in *Royal Globe*, including rejection of the contribution test for application of a last injurious exposure standard to occupational diseases caused by physical activities.

Rather, the addition of such phrase to the statute imposing liability upon the last employer minimizes the harsh effects of that

statute only to the extent that liability now is limited to those employers in whose employ there has been exposure to a harmful concentration of the hazard *and the effect* of such exposure is a substantial and permanent aggravation of the previous condition.

Thus, under the present version of § 8–41–304(1), the length of the period of employment with a particular employer continues to be immaterial to a finding of liability. Instead, the focus now is on both the harmful nature of the concentration of the exposure and the magnitude of the effect of such exposure.

As under *Royal Globe*, the employee is not required by the present version of § 8–41–304 to ascertain the exact amount that each employer contributed in causing his occupational disease. Nor is he or she required to pinpoint exactly which employer most injuriously exposed the claimant. Instead, such an employee is allowed to recover from the last employer in whose employ the last injurious exposure occurred and resulted in an aggravation that is both permanent and substantial.

## II.

 Substantial evidence is probative evidence which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or findings. *F.R. Orr Construction v. Rinta*, 717 P.2d 965 (Colo.App.1985). Furthermore, it is within the prerogative of the ALJ, as factfinder, to credit all, or part, of a witness' testimony. *See Colorado Springs Motors, Ltd. v. Industrial Commission*, 165 Colo. 504, 441 P.2d 21 (1968); *Fort Logan Mental Health Center v. Industrial Commission*, 723 P.2d 740 (Colo. App.1986).

 Here, the ALJ based his finding that the aggravation was "substantial" on a medical report which compared test results before and after the claimant's employment with Monfort and which showed significant deterioration in his condition. He also concluded that the aggravation was "permanent" based upon the fact that certain test results continued to show significant deterioration in the claimant's condition more than six months after the claimant left Monfort.

Therefore, we agree with the Panel's determination that substantial evidence supports the determination that the claimant sustained a substantial permanent aggravation of his condition. Accordingly, the ALJ's findings are binding on appeal both before the Panel and before this court. *See May D & F v. Industrial Claim Appeals Office*, 752 P.2d 589 (Colo.App.1988).

## III.

In addition, we agree with the Panel that the out-of-state cases relied upon by Monfort are not dispositive. Those cases, if concerning an occupational disease, apply a contribution test by weighing the relative amount or duration of exposure among the various employers instead of focusing on the concentration of exposure, as required by the last injurious exposure rule which has been adopted and defined in this jurisdiction. *See* 4 A. Larson, *Law of Workmen's Compensation* § 95.26(a) at 17–195, –196 (1993).

Lastly, we agree with the Panel that to hold that the claimant's disability attributable to the pre-existing condition in every case of aggravation of an occupational disease would render meaningless the provisions of § 8–41–304(1).

Order affirmed.

NEY and MARQUEZ, JJ., concur.