**DELTA DRYWALL and CNA Insurance Companies, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado; Western Wallboard; Colorado Compensation Insurance Authority; James W. Hawks; Heggem–Lundquist Paint Co.; Aetna Casualty & Surety Insurance Co.; KWHD TV 53/Le–Sea Broadcasting; Azusa Doorworks; and Non–Insured or Unknown, Respondents.**

No. 93CA0330.

Colorado Court of Appeals, Div. I.

Dec. 2, 1993.

Rehearing Denied Jan. 27, 1994.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

White and Steele, P.C., Robert H. Coate, Denver, for petitioners.

No appearance for respondent Industrial Claim Appeals Office.

Anderson, Campbell & Laugesen, P.C., Raymond F. Callahan, Denver, for respondents Western Wallboard.

Paul Tochtrop, Denver, for Colorado Compensation Ins. Authority.

Frederic M. Wise, P.C., Frederic M. Wise, Colorado Springs, for respondent James W. Hawks.

Blackman & Levine, Barbara S. Henk, Denver, for respondents Heggem–Lundquist Paint Co. and Aetna Cas. & Sur. Ins. Co.

Glasman, Jaynes & McBride, John G. Napier, Denver, for respondents KWHD TV/ Le–Sea Broadcasting.

No appearance for respondent Azusa Doorworks.

Opinion by Judge PIERCE.

Petitioners, Delta Drywall (employer) and CNA Insurance Companies, seek review of a final order of the Industrial Claim Appeals Panel that determined that James W. Hawks (claimant) suffered an industrial injury rather than an occupational disease and was, therefore, entitled to workers' compensation benefits from petitioners. We affirm.

In April 1990, while working as a carpenter for employer, claimant fell from a scaffold and, at the same time, pulled the scaffold on top of himself. He originally complained of back pain for which petitioners admitted liability. The issue here, however, involves his bilateral upper extremity pain and numbness.

Claimant testified that a few days after his fall, his hands started "going to sleep." His testimony was corroborated by a co-worker. Medical records, however, reflect upper extremity complaints beginning in July 1990.

A few days after the accident, claimant was released to return to work. He then quit his job with employer. Between May 1990 and October 1991, claimant held several construction jobs for other employers (subsequent employers). In November 1991, during a period of unemployment, claimant underwent carpal tunnel operations on both hands. After he was released to return to work, he became a self-employed subcontractor.

The Administrative Law Judge (ALJ) determined that claimant sustained an industrial injury while working for employer because the fall from the scaffolding was the specific traumatic event which caused the bilateral carpal tunnel syndrome. The ALJ specifically found that claimant's condition was not an occupational disease to which claimant had been injuriously exposed during his work for the subsequent employers. Thus, the subsequent employers had no liability, and employer was ordered to pay all of the workers' compensation benefits. The Panel affirmed.

Petitioners contend that claimant suffered from an occupational disease when he returned to work as a self-employed carpenter in 1992 and that, therefore, the Panel's order to the contrary is unsupported by substantial evidence. We disagree.

■ If the record contains substantial evidence to support it, an award of benefits must be upheld. *May D & F v. Industrial Claim Appeals Office,* 752 P.2d 589 (Colo. App.1988).

■ Substantial evidence is probative evidence which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences. *F.R. Orr Construction Co. v. Rinta,* 717 P.2d 965 (Colo.App.1985).

■ Assessing the weight, credibility, and sufficiency of such evidence is the exclusive domain of the ALJ, and findings based on conflicting evidence are conclusive on review. *Rockwell International v. Turnbull,* 802 P.2d 1182 (Colo.App.1990).

■ Under the Workers' Compensation Act, the term "accident" refers to an event traceable to a particular time, place, and cause. *Colorado Fuel & Iron Corp. v. Industrial Commission,* 154 Colo. 240, 392 P.2d 174 (1964). An "occupational disease," on the other hand, is acquired in the ordinary course of employment and is a natural incident of the employment. *Climax Molybdenum Co. v. Walter,* 812 P.2d 1168 (Colo. 1991).

Here, the ALJ's ruling appears to conflict with existing precedent because *Subsequent Injury Fund v. Grant,* 827 P.2d 574 (Colo. App.1991) and *Monfort Inc. v. Rangel,* 867 P.2d 122 (Colo.App.1993) both state unequivocally that carpal tunnel syndrome is an occupational disease. However, we conclude the factual circumstances here are distinguishable.

The holdings in *Grant* and *Rangel* are correct because, in each case, the condition

developed in the ordinary course of the employment from repetitive movements that were a natural incident of the employment and there was no "accident" that was causative of the condition which could be traceable to a particular time, place, and cause. The operational facts of the case before us, however, were sufficient to justify the factual findings of the ALJ that the condition developed here as the specific result of an industrial injury.

■ Because of the different circumstances presented here, we conclude that our statements in *Grant* and *Monfort* must be modified. We now hold that carpal tunnel syndrome may be either an occupational disease, or may be caused by an industrial injury, depending upon the causal and medical facts that develop from case to case.

■ Even using this modified definition, however, the petitioners question legal and factual determinations made by the ALJ in this action. We perceive no error.

Contrary to petitioners' assertions, the cumulative effect of the inconsistencies between claimant's testimony and the medical evidence does support the determination that an upper extremity injury occurred during claimant's tenure with employer. The opinion of one physician that claimant sustained a "substantial permanent aggravation" of his condition upon his return to self-employment does not compel a different conclusion. This language would be relevant only if the ALJ had determined that claimant sustained an occupational disease in the first instance, rather than an injury; hence, it is not dispositive here. *See* § 8–41–304(1), C.R.S. (1993 Cum.Supp.).

The ALJ noted that claimant suffered from continuous upper extremity problems since the time of his fall and, although some of his symptoms continued to worsen during the time of his subsequent employments, the overall weight of the medical evidence did not support a finding that the worsening was causally related to these work activities. Rather, the ALJ could properly infer that

since claimant did not become symptomatic until after a specific, traumatic accident, there was no hazard peculiar to the occupation which would render his condition an occupational disease. *Cf. Anderson v. Brinkhoff,* 859 P.2d 819 (Colo.1993) (liability imposed for occupational hazard).

Since substantial evidence, including portions of claimant's testimony and medical evidence, supports the finding of an injury, we may not disturb the corresponding liability imposed on employer. *See May D & F v. Industrial Claim Appeals Office, supra.*

The order of the Panel is affirmed.

CRISWELL and ROTHENBERG, JJ., concur.