**WAL–MART STORES, INC., and Insurance Company of the State of Pennsylvania, Petitioners,**

v.

**The INDUSTRIAL CLAIMS OFFICE OF THE STATE OF COLORADO and Danielle M. Grigsby, Respondents.**

No. 99CA0028.

Colorado Court of Appeals, Div. II.

Sept. 30, 1999.

Clifton, Hook & Bovarnick, P.C., Richard A. Bovarnick, Harvey D. Flewelling, Denver, Colorado, for Petitioners.

Withers, Seidman & Rice, P.C., Christopher Seidman, Grand Junction, Colorado, for Respondent Danielle M. Grigsby.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge VOGT.

In this workers' compensation proceeding, Wal–Mart Stores, Inc., and its insurer, Insurance Company of the State of Pennsylvania (collectively, employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) affirming the determination of the Administrative Law Judge (ALJ) that Danielle M. Grigsby (claimant) was entitled to medical benefits for treatment of a neck condition. We affirm.

Claimant sought medical benefits for evaluation and treatment of her neck pain. Employer refused to pay, contending that her neck pain was not work-related.

Following a hearing, the ALJ concluded that, on or about December 1, 1996, claimant had sustained a "work-related injury or occupational disease" causing upper extremity and neck pain. He ordered employer to pay for the medical care necessary to evaluate and treat claimant's neck condition. The Panel affirmed.

I.

Employer argues that there was no substantial evidence to support the ALJ's determination that claimant's neck pain was work-related. We disagree.

A claimant seeking benefits for an occupational disease must establish the existence of the disease and that it was directly and proximately caused by the claimant's employment or working conditions. *See Cowin & Co. v. Medina,* 860 P.2d 535 (Colo. App.1992); § 8–40–201(14), C.R.S.1999.

If substantial evidence supports the ALJ's conclusion that a claimant's condition is work-related, that determination may not be disturbed on review. *City of Durango v. Dunagan,* 939 P.2d 496 (Colo.App.1997); *see also* § 8–43–308, C.R.S.1999. Further, the ALJ's resolution of conflicts in the evidence, credibility determinations, and plausible inferences drawn from the evidence are binding on review. *Dover Elevator Co. v. Industrial Claim Appeals Office,* 961 P.2d 1141 (Colo.App.1998).

In this case, claimant whom the ALJ expressly found credible testified that she began having neck pain, wrist pain, and tingling in her fingers at the end of 1996, and that she thought those problems were related to heavy lifting and repetitive movements required by her employment.

Although claimant's initial complaints related primarily to her hands and wrists, a neurologist and a physical therapist documented symptoms of neck pain and cervical spasms by early February 1997.

The deposition testimony of claimant's treating physician, while subject to conflicting inferences, included statements relating claimant's neck condition to her employment. Additionally, claimant's medical records included the report of a second physician who opined that claimant's cervical symptoms were the result of work-related activities, noting that claimant did not have the symptoms prior to December 1996.

In sum, there was substantial evidence to support the ALJ's determination that claimant's neck problems were work-related. Therefore, we may not disturb that determination on appeal.

II.

Employer also contends that claimant is not entitled to recovery because she did not

establish an onset of disability in December 1996. Again, we do not agree.

■ The Panel did not address the issue because it concluded that employer had waived the right to raise it by acquiescing in claimant's statement of the issues at the outset of the hearing. We agree with employer that the limited colloquy relied upon by the Panel does not warrant a finding of waiver, particularly in light of employer's consistent position throughout the hearing that claimant did not sustain any compensable injury to her neck in December 1996.

However, although we agree that the issue was not waived, we conclude that employer is not relieved of its obligation to pay medical benefits based on claimant's asserted failure to establish an onset of disability.

■ Because claimant's injury resulted from the conditions of her employment rather than from a specific accident or trauma, it was properly characterized by the Panel as an occupational disease within the meaning of § 8–40–201(14). *See Campbell v. IBM Corp.*, 867 P.2d 77 (Colo.App.1993).

Employer relies on decisions of this court holding that an occupational disease is compensable only if it results in disability and that benefits are to be computed as of the date of disability. These cases, however, involve awards of disability benefits or other situations in which the date of disability directly affects the claimant's benefits. *See, e.g., Subsequent Injury Fund v. Industrial Claim Appeals Office*, 899 P.2d 271 (Colo.App.1994)(claimant was entitled to permanent total disability benefits, plus interest, from date he became totally disabled); *Henderson v. RSI, Inc.*, 824 P.2d 91 (Colo.App.1991)(pursuant to onset of disability rule, claimant's disability benefits had to be computed based on his wages at the onset of his disability); *see also Ortiz v. Charles J. Murphy & Co.*, 964 P.2d 595 (Colo.App.1998)(applying onset of disability rule to find that claimant's petition to reopen an occupational disease claim was untimely).

While the date of disability may be important for such purposes, we decline to apply the onset of disability rule to block payment of medical expenses necessitated by a proven occupational disease before it has rendered a worker disabled or incapacitated.

The Workers' Compensation Act, § 8–40–101, et seq., C.R.S.1999, was enacted to relieve injured workers from the adverse economic effects of a work-related injury or occupational disease. The Act is "designed to compensate an injured worker for two distinct losses resulting from an industrial injury or occupational disease: the loss of earning capacity based on the concept of disability, and medical or other costs associated with the injury or disease." *Grover v. Industrial Commission*, 759 P.2d 705, 709 (Colo.1988).

■ The Act treats medical benefits and disability benefits differently for various purposes. *See Royal Globe Insurance Co. v. Collins*, 723 P.2d 731 (Colo.1986). Further, a worker's need for medical treatment does not necessarily coincide with the period when the worker is disabled or entitled to disability benefits. *See Grover v. Industrial Commission, supra; see also* § 8–42–101(1)(a), C.R.S.1999 (requiring employer to furnish medical care "at the time of the injury or occupational disease and thereafter during the disability . . .").

Finally, we perceive no basis for treating occupational diseases differently from accidental injuries, for which medical care is provided even if the injury is not disabling. The distinction between an occupational disease and an industrial injury is not always clear *see Campbell v. IBM Corp., supra; Delta Drywall v. Industrial Claim Appeals Office*, 868 P.2d 1155 (Colo.App.1993)(carpal tunnel syndrome may be either an occupational disease or the result of an industrial injury) and obtaining medical care for either has the same type of financial impact on the worker and the employer.

For these reasons, we conclude that a claimant suffering from an occupational disease is entitled to reasonably necessary medical benefits, even if the disease has not yet become disabling. Thus, we uphold the award of benefits here notwithstanding the

absence of evidence establishing an onset of disability.

The order of the Panel is affirmed.

Judge PLANK and Judge JONES concur.